Filed 11/26/14; pub. and mod. order 12/23/14 (see end of opn.; received 12/30/14)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAURALYN SWANSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>MORONGO UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants and Respondents. | G050290<br><br>(Super. Ct. No. CIVMS900938)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of San Bernardino County, James J. Hosking, Judge.  Reversed.

        Law Offices of James P. Stoneman II and James P. Stoneman II for Plaintiff and Appellant.

        Cummings, McClorey, Davis, Acho & Associates and Maurice S. Kane, Jr., for Defendants and Respondents.

                            *          *          *

Plaintiff and appellant Lauralyn Swanson sued defendant and respondent Morongo Unified School District (District) under California's Fair Employment and Housing Act (Govt. Code, § 12900 et seq.; FEHA)[1] after the District chose not to renew her probationary teaching contract for the 2009/2010 school year. Swanson's complaint alleges the District violated the FEHA by (1) discriminating against her because she was diagnosed with breast cancer and took medical leave to receive treatment; (2) failing to reasonably accommodate Swanson's cancer-related health conditions by refusing to assign her to teach an available second grade class she believed provided the greatest opportunity for her to successfully teach while recovering from her cancer treatments; and (3) failing to engage in a good faith, interactive process to identify a reasonable accommodation for her cancer-related health conditions.

The District sought summary judgment on Swanson's discrimination claim because it elected not to renew her probationary teaching contract for the legitimate, nondiscriminatory reason she failed to perform to the District's teaching standards. The District sought summary judgment on Swanson's other causes of action, arguing it reasonably accommodated Swanson and engaged in an interactive process by changing her teaching assignment from fifth grade to kindergarten when Swanson objected to the fifth grade teaching assignment. The trial court agreed and granted the District summary judgment on all causes of action.

We reverse. Swanson established a triable issue of material fact on her discrimination claim by presenting evidence supporting her theory the District changed her teaching assignments and failed to provide her the resources needed to succeed so it would have a basis for not renewing her contract. On the failure to accommodate claim, the District did not meet its initial summary judgment burden because it failed to show

_____

[1] All statutory references are to the Government Code unless otherwise stated.

2

the second grade assignment Swanson sought was not a reasonable accommodation or that the fifth grade or kindergarten assignments the District offered were reasonable accommodations. The District also failed to meet its initial burden on the interactive process claim because it failed to present any evidence showing it engaged in an ongoing dialog with Swanson regarding her requested accommodations.

I

FACTS AND PROCEDURAL HISTORY

Swanson is an elementary school teacher with more than 30 years experience teaching kindergarten through sixth grade. She holds a lifetime teaching credential, a master's degree in curriculum and instruction, and several additional teaching certifications. During her career, Swanson has served as a "mentor teacher," an "intern academy instructor," the interim coordinator for Claremont Graduate School's Inter-Teacher Program, a "pilot teacher for state adoptions," a workshop designer/presenter, a "lead teacher," and a principal designee. She also is a published curriculum writer in several subject matter areas and a successful grant writer.

In August 2006, the District hired Swanson as a technology/reading specialist and computer laboratory teacher at Yucca Valley Elementary School. During the 2006/2007 school year, Swanson taught in the school's computer laboratory and received excellent performance evaluations from her principal, Jeffrey Turner. Turner told Swanson she would keep the same teaching assignment for the 2007/2008 school year, but he left for another school and the new principal, John Lowe, made a last minute change to Swanson's teaching assignment, assigning her to be a "'LANGUAGE!' Reading Specialist."

In July 2007, Swanson was diagnosed with breast cancer and underwent a mastectomy. She immediately informed Lowe of her diagnosis and spoke with him again shortly after her surgery about the upcoming school year. Swanson expressed concern to

3

Lowe about her new teaching assignment because she lacked the necessary training. Lowe told her not to worry because she could attend a week-long training session during mid-August 2007 if she felt up to it. Although the training occurred just two weeks after her surgery, Swanson attended the five-day training. Near the end of the final day, the trainer sent Swanson to the emergency room because of complications from her surgery.

Swanson's doctors scheduled her for radiation and chemotherapy treatments during the fall of 2007. She delayed those treatments so she could prepare lesson plans and the instructional materials for the substitute teacher who would take her place while she was on leave. Swanson began her treatments in October 2007, and was on medical leave until early March 2008. Because she missed so much of the 2007/2008 school year, Lowe did not submit a performance evaluation, but instead wrote her a positive recommendation.

In June 2008, Lowe informed Swanson he would not assign her to the reading specialist position she held during the 2007/2008 school year, but instead offered her a fifth grade teaching assignment for the 2008/2009 school year. Swanson objected this would be her third different assignment in three years, and explained her precarious health would prevent her from doing the necessary work required for a new assignment. If she was to be reassigned, Swanson requested Lowe assign her to an opening at the second grade level because she recently had taught that grade at a different school. Lowe, however, assigned another teacher to the second grade opening and assigned Swanson to teach a kindergarten class even though he knew she had not taught kindergarten in nearly 30 years. Swanson expressed concern about teaching kindergarten-age children because her cancer treatments damaged her immune system and she feared exposure to the many illnesses of kindergarten children would pose further health risks. Lowe nonetheless refused to change Swanson's teaching assignment.

In late September 2008, Swanson was forced to take a medical leave from her kindergarten teaching assignment when she was hospitalized for eight days with

4

pancreatitis, pneumonia, and liver issues that she attributed to her kindergarten teaching assignment. She did not return to teaching until the beginning of December 2008.

In January 2009, Lowe scheduled Swanson's annual teacher evaluation, which included observing her teach three lessons to her kindergarten class on three separate dates. Before the observation dates, Swanson asked Lowe to provide her with the District's preevaluation format for the lessons she would teach. The preevaluation format provides the District's expectations for each lesson and is customarily given to teachers before they are observed. Lowe promised to provide the preevaluation format, but he failed to do so until after he completed all three observations. Lowe evaluated Swanson's performance on each lesson as poor and gave her the option to either resign her teaching position or accept a remediation plan to correct the deficiencies in her teaching performance.

Swanson selected the remediation plan, which included three additional observations. The plan also included the opportunity for Swanson to obtain assistance in addressing her deficiencies before the second round of observations. Swanson requested a mentor teacher to observe her teaching and make suggestions designed to correct the reported deficiencies. Lowe promised to look into providing the requested assistance, but never provided it. Instead, Swanson was allowed to observe two other kindergarten teachers in the District, but she found the students in those classes to be very different from her students and therefore the observations were not helpful.

Lowe conducted the first of Swanson's second round of observations in late February 2009. He rated the lesson a success and gave Swanson a "meets expectation" rating on nearly every category of the evaluation. Lowe conducted the next observation a few days later and his comments immediately after the observation implied Swanson would receive another positive evaluation. Lowe's tone, however, dramatically changed when they met the next day to discuss his evaluation.

5

Without providing any feedback, Lowe asked Swanson to resign her teaching position in lieu of receiving a "non-re-elect" notice. He explained the Education Code allowed the District to choose not to offer Swanson a contract for the next school year because she had not yet taught two complete school years in the District and therefore had not attained tenure. According to Lowe, the District pressured him to decide Swanson's status even though she had not completed her remediation plan. If Swanson resigned, Lowe promised he would provide her a positive evaluation on the second observation of the remediation plan, but he would give her a negative evaluation if she refused to resign. Finally, Lowe cancelled the final observation because he said there was nothing Swanson could do to change his decision not to renew her contract. Swanson did not resign and Lowe gave her a negative evaluation for the second observation.

A few days later, Lowe informed Swanson she would need to teach the lesson for her final observation despite his earlier comments to the contrary. Swanson requested the District assign an administrator other than Lowe to conduct the observation because she believed he was prejudiced against her. The District assigned another administrator and scheduled the observation for mid-March 2009. More than a week before the scheduled observation, the District's Board of Education voted not to renew Swanson's contract for the 2009/2010 school year. The District, however, did not notify Swanson of that vote until after it completed the final observation. The administrator who conducted the observation rated Swanson's teaching unsatisfactory in numerous categories, and the District notified her of its decision not to offer her a new contract the next day.

After exhausting her administrative remedies, Swanson filed this lawsuit in November 2009. Her operative complaint alleged two causes of action against the District: (1) "Discrimination Based on Medical Condition, Denial of Reasonable Accommodation, and Refusal to Engage in the Interactive Process," and

6

(2) "Discrimination Based on Physical Disability, Denial of Reasonable Accommodation, and Refusal to Engage in the Interactive Process."  The District moved for summary judgment or, alternatively, summary adjudication on both causes of action.  The trial court granted the motion and entered judgment against Swanson.  She now appeals.[2]

## II

### DISCUSSION

A.    *Fundamental Summary Judgment Principles*

"'"'"The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute." [Citation.]  "The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues:  the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings." [Citations.]  The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action.  [Citation.]' [Citation.]" (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 888 (*Carlsen*).)

"A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit.  [Citation.]  The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim.  [Citations.]  To meet this burden,

_____

[2]    Swanson's complaint also alleged a harassment cause of action against the District and Lowe, a defamation cause of action against the District and Doug Weller, the District's Assistant Superintendent of Human Resources, and an intentional infliction of emotional distress cause of action against the District, Lowe, and Weller.  Swanson voluntarily dismissed the harassment and defamation causes of action and also Lowe and Weller before the trial court's summary judgment ruling.  She does not challenge the trial court's decision granting the District summary judgment on the intentional infliction of emotion distress cause of action.  Accordingly, only the two discrimination causes of action are at issue on this appeal.

the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law. [Citation.] "'If a plaintiff pleads several theories, the defendant has the burden of demonstrating there are no material facts requiring trial on any of them.'" [Citation.]" (*Carlsen*, *supra*, 227 Cal.App.4th at p. 889.)

"Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts." (*Carlsen*, *supra*, 227 Cal.App.4th at p. 889.) The plaintiff opposing the motion, however, has no burden to present any evidence until the defendant meets his or her initial burden. (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 940 (*Hawkins*) ["'Where the evidence presented by defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff'"]; *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 717 (*Lopez*) ["As the party moving for summary judgment, [defendant] had the burden to show that it was entitled to judgment with respect to all theories of liability asserted by [plaintiff]"].)

We review a trial court's ruling on a summary judgment motion de novo. (*Carlsen*, *supra*, 227 Cal.App.4th at p. 890.) "'Our review of the summary judgment motion requires that we apply the same three-step process required of the trial court. [Citation.] "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" [Citation.]' [Citation.]" (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.)

8

B.      *The Trial Court Erred in Granting the District's Summary Judgment Motion*

Swanson alleges two causes of action against the District:  One for medical condition discrimination based on her breast cancer and a second for physical disability discrimination based on the pancreatitis, pneumonia, and liver issues she developed shortly after starting her kindergarten teaching assignment.  Other than the allegations identifying the underlying medical condition and physical disability, the two causes of action are virtually identical, and the parties focus on the medical condition cause of action without separately addressing the physical disability claim.

Each cause of action alleges the District engaged in three employment practices outlawed by the FEHA:  (1) medical condition or physical disability discrimination (§ 12940, subd. (a)); (2) failure to reasonably accommodate a known condition or disability (§ 12940, subd. (m)); and (3) failure to engage in the interactive process to determine a reasonable accommodation for a known condition or disability (§ 12940, subd. (n)).  Although Swanson combines them in a single cause of action, the FEHA creates a separate cause of action based on each of these unlawful employment practices.  (See *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1002-1003 (*Scotch*); *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 (*Gelfo*); CACI Nos. 2540, 2541, 2546.)  We therefore address each of them separately.

1.      A Triable Issue Exists on Swanson's Discrimination Claims

a.      *Governing Discrimination Principles*

The FEHA makes it "an unlawful employment practice . . .  [¶]  [f]or an employer, because of the . . . physical disability . . . [or] medical condition . . . of any person . . . to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a).)  An employer, however, is not prohibited "from refusing to hire or discharging an employee with a physical . . . disability . . . where the employee, because

9

of his or her physical . . . disability, is unable to perform his or her essential duties even with reasonable accommodations . . . ." (*Id*., subd. (a)(1).)

Under the FEHA, the term "[m]edical condition" includes "[a]ny health impairment related to or associated with a diagnosis of cancer or a record or history of cancer." (§ 12926, subd. (i).) The term "[p]hysical disability" includes "any physiological disease, disorder, [or] condition" that affects the "neurological, immunological, musculoskeletal," or any other major "body system[]," and "[l]imits a major life activity." (§ 12926, subd. (m).) The District does not dispute Swanson had a medical condition and physical disability protected by the FEHA.

In analyzing an employee's claim for unlawful discrimination under the FEHA, California courts have adopted the three-stage, burden-shifting test the United States Supreme Court established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159 (*Wills*).) "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz*, at p. 354.)

"At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled. [Citations.] While the plaintiff's prima facie burden is 'not onerous' [citation], he must at least show "'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' [Citation]."

10

[Citation.]' [Citations.]" (*Guz*, *supra*, 24 Cal.4th at pp. 354-355.) If the plaintiff meets this initial burden, a rebuttable presumption of discrimination arises. (*Id*. at p. 355.)

"[T]he burden [then] shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason. [Citations.]" (*Guz*, *supra*, 24 Cal.4th at pp. 355-356.) "This likewise is not an onerous burden [citation], and is generally met by presenting admissible evidence showing the defendant's reason for its employment decision [citation]." (*Wills*, *supra*, 195 Cal.App.4th at p. 160.)

"Finally, if the defendant presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to establish the defendant intentionally discriminated against him or her." (*Wills*, *supra*, 195 Cal.App.4th at p. 160.) The plaintiff may satisfy this burden "'by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' [Citations.]" (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1529, original italics.)

The trial court decides the first two stages of the *McDonnell Douglas* test as questions of law. If the plaintiff and defendant satisfy their respective burdens, the presumption of discrimination disappears and the question whether the defendant unlawfully discriminated against the plaintiff is submitted to the jury to decide whether it believes the defendant's or the plaintiff's explanation. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 201.)

"'"[W]e must keep in mind that the *McDonnell Douglas* test was originally developed for use at trial [citation], not in summary judgment proceedings. . . .'" [Citation.]" (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309 (*Sandell*).)

11

As explained above, California's summary judgment law places the initial burden on a moving party defendant to either negate an element of the plaintiff's claim or establish a complete defense to the claim. (*Carlsen*, *supra*, 227 Cal.App.4th at p. 889.) The burdens and order of proof therefore shift under the *McDonnell Douglas* test when an employer defendant seeks summary judgment. (*Wills*, *supra*, 195 Cal.App.4th at p. 160; *Sandell*, at p. 309.) An employer defendant may meet its initial burden on summary judgment, and require the employee plaintiff to present evidence establishing a triable issue of material fact, by presenting evidence that *either* negates an element of the employee's prima face case, or establishes a legitimate nondiscriminatory reason for taking the adverse employment action against the employee. (*Ibid.*)

"[T]o avoid summary judgment [on the second of these two grounds], an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005 (*Hersant*); *Sandell*, *supra*, 188 Cal.App.4th at p. 314.)

        b.     *The Parties' Contentions and Evidence on Swanson's Discrimination Claims*

The District contends Swanson's discrimination claims fail because it decided not to renew her teaching contract for the legitimate, nondiscriminatory reason she continued to perform below expectations after the opportunity to demonstrate improvement in the areas identified in the District's remediation plan. The District met its initial burden by presenting Swanson's performance reviews, her remediation plan, and declarations by Lowe and an assistant superintendent explaining the District did not renew Swanson's contract based on her performance.

12

The burden therefore shifted to Swanson to present evidence showing the District engaged in intentional discrimination. To meet her burden, Swanson had to present evidence showing (1) the District's stated reason for not renewing her contract was untrue or pretextual; (2) the District acted with a discriminatory animus in not renewing her contract; or (3) a combination of the two. (*Wills*, *supra*, 195 Cal.App.4th at p. 171; *Hersant*, *supra*, 57 Cal.App.4th at pp. 1004-1005; *Sandell*, *supra*, 188 Cal.App.4th at p. 314.) We conclude Swanson met this burden by presenting evidence establishing a triable issue of fact on whether the District intentionally discriminated against her when making its teaching assignments and its treatment of her after her cancer diagnosis and medical leaves.

On her discrimination claims, Swanson does not dispute the District decided not to renew her contract based on her poor performance reviews. Instead, she alleges, once she informed the District of her breast cancer and took medical leave to receive treatment, the District began a course of conduct designed to set her up for failure by giving her difficult assignments without the resources required to succeed so the District later could use Swanson's performance as a pretext for its decision not to renew her contract.

The evidence the parties presented establishes the following disputed facts creating a triable issue on Swanson's liability theory: (1) Swanson performed well in the teaching assignments she held during her first two years with the District, but the District gave her a new teaching assignment for the first full school year after she completed her cancer treatments; (2) the District gave Swanson the new assignment knowing it would require her to spend additional time planning and preparing to teach her new class and Swanson's weakened health condition impaired her ability to do so; (3) the District denied Swanson's request to teach a second grade class similar to one she recently had taught at her previous school, and instead assigned the available second grade class to another teacher; (4) the District assigned Swanson to teach a kindergarten class even

13

though she had not taught kindergarten in nearly 30 years and expressed concern her weakened immune system could not protect her from the many illnesses prevalent in kindergarten classes; (5) although promising to do so, Lowe did not provide Swanson the preevaluation format she needed to prepare for her first series of teacher observations; (6) the District did not provide Swanson the mentor teacher she requested after receiving the remediation plan or any of the other training or assistance she requested; (7) Lowe told Swanson the District wanted him to make a determination on her employment status before he had time to complete the second series of teacher observations; (8) Lowe asked Swanson to resign her teaching position even though he gave her a positive review on the first teaching observation following the remediation plan and implied her review on the second observation also would be positive; and (9) the District's Board of Education voted not to renew Swanson's contract *before* she completed the remediation plan and all of the observations were conducted.

The District contends these facts do not create a triable issue because Swanson was an untenured, probationary teacher with no right to have her contract renewed, and the District had the discretion to give Swanson any teaching assignment it deemed appropriate. We disagree. Neither Swanson's probationary status nor the District's discretion to make teaching assignments deprives Swanson of the FEHA's protections or otherwise allows the District to unlawfully discriminate against her. Swanson does not claim the District exercised powers it did not have; rather, she claims the District exercised the powers it had in an unlawful and discriminatory manner. If we accepted the District's contention, the FEHA's protections would never apply to an at-will employee because the employer has the authority to terminate the employee.

The District also contends "[t]here were economic reasons to shift [Swanson] around because of reduced funding from the State of California," but the District's evidence fails to show why this affected its decision to reassign Swanson from her reading specialist position to her kindergarten position. For example, the evidence

14

does not show any reduction in funding required the elimination of Swanson's reading specialist position or prevented the District from reassigning another teacher to fill the fifth grade position offered to Swanson or the kindergarten position she ultimately received. The District's evidence merely states the District received less money from the state without any explanation how that required the District to reassign her to a position that potentially endangered her health.

Finally, the District contends, and the trial court agreed, Swanson did not meet her initial burden to establish a prima facie case of discrimination. This argument, however, misconstrues the parties' burdens on the District's summary judgment motion. As explained above, Swanson bears the initial burden *at trial* to establish a prima facie case of discrimination under the *McDonnell Douglas* framework (*Guz*, *supra*, 24 Cal.4th at pp. 354-355). In a summary judgment motion, however, the moving party always bears the initial burden. Thus, under the *McDonnell Douglas* framework, the District bore the initial burden to either negate an essential element of Swanson's prima facie case or establish a legitimate, nondiscriminatory reason for its actions (*Wills*, *supra*, 195 Cal.App.4th at p. 160; *Sandell*, *supra*, 188 Cal.App.4th at p. 309). Swanson bears no burden until the District satisfies its initial burden, and then Swanson need only present evidence establishing a triable issue on the specific element the District challenges. (See *Hawkins*, *supra*, 144 Cal.App.4th at p. 940.) Swanson does not otherwise have to prove her entire case to defeat the District's motion. As explained above, Swanson presented evidence establishing a triable issue, and therefore the trial court erred in granting summary judgment on her discrimination claims.

2.      The District Failed to Meet Its Initial Burden to Negate an Essential Element of Swanson's Failure to Accommodate Claims

a.      *Governing Reasonable Accommodation Principles*

Under the FEHA, an employer's "fail[ure] to make reasonable accommodation for the known physical or mental disability of an applicant or employee" is an unlawful employment practice.  (§ 12940, subd. (m).)  A reasonable accommodation is any "'modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'"  (*Scotch*, *supra*, 173 Cal.App.4th at p. 1010.)  Reasonable accommodations include "[j]ob restructuring, part-time or modified work schedules*, reassignment to a vacant position*, . . . and other similar accommodations for individuals with disabilities."  (§ 12926, subd. (p), italics added; *Scotch*, at p. 1010.)

An employer has an "affirmative duty" to reasonably accommodate a disabled employee (*Smith v. International Brotherhood of Electrical Workers* (2003) 109 Cal.App.4th 1637, 1653; Cal. Code Regs., tit. 2, § 11068, subd. (a)), and that duty is a "''continuing'''" one that is "''not exhausted by one effort.'''"  (*Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1138.)[3]  A single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation.  (*A.M. v. Albertsons, LLC* (2009) 178 Cal.App.4th 455, 464-465.)  The FEHA, however, does not require an employer to make an accommodation "that is demonstrated by the employer or other covered entity to produce undue hardship . . . to its operations."  (§ 12940, subd. (m); *Scotch*, *supra*, 173 Cal.App.4th at p. 1003.)

---

[3]      "Resort to federal case law is particularly appropriate in connection with the duty to make reasonable accommodation because the provisions of the state regulations defining 'reasonable accommodation' under the FEHA are virtually identical to language of the A[mericans with] D[isabilities] A[ct] reiterated in the regulations implementing that federal statute."  (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1384 (*Spitzer*).)

16

The elements of a failure to accommodate claim are "(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Scotch*, *supra*, 173 Cal.App.4th at p. 1010.)  The District does not dispute it had a duty to reasonably accommodate Swanson's cancer-related conditions. (See *Fisher v. Superior Court* (1986) 177 Cal.App.3d 779, 783 [employer had duty to reasonably accommodate employee's cancer-related medical condition].)

        b.       *The Parties' Contentions and Evidence on Swanson's Failure to Accommodate Claims*

The District contends these claims fail because it reasonably accommodated Swanson's cancer-related conditions by granting her request for medical leaves, by excusing her from the reading specialist training in August 2007 when she became ill during the final day, by offering her a kindergarten class assignment when she objected to the fifth grade assignment, and by rescheduling one of her teacher observations when she became sick.  These accommodations, however, do not satisfy the District's initial burden on summary judgment because they fail to address the liability theory Swanson alleged to support her failure to accommodate claims. (*Carlsen*, *supra*, 227 Cal.App.4th at p. 889 [to meet initial burden, defendant must negate all liability theories plaintiff alleges]; *Lopez*, *supra*, 45 Cal.App.4th at p. 717 [same].)

Swanson does not claim the District failed to grant her leave or any other scheduling accommodation.  Instead, she alleges the District failed to reasonably accommodate her cancer-related conditions because it refused to provide her the accommodation she sought after the District decided to move her out of the reading specialist position she held during the 2007/2008 school year.  Specifically, she alleges the District refused her request to teach an available second grade class.  According to Swanson, the second grade class assignment was a reasonable accommodation that would allow her to perform her essential job functions because she recently had taught a second

17

grade class when working in another district, and therefore was familiar with the curriculum and children of that age. Swanson alleged any other new teaching assignment would require additional time to prepare and plan lessons, but the effect of her cancer treatments jeopardized her ability to prepare for her new assignment.

The District contends it was not required to grant Swanson's request for the second grade assignment because the FEHA does not obligate an employer to choose either the best accommodation or the specific accommodation an employee seeks, but rather only a reasonable accommodation. (See *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222-1223; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228.) The District, however, misconstrues its duty to accommodate Swanson and also its burden on summary judgment.

Although an employer does not have an obligation to create a new job, reassign another employee, or promote a disabled employee, "[c]ourts have made it clear that 'an employer has a *duty* to reassign a disabled employee if an already funded, vacant position at the same level exists.' [Citation.]" (*Spitzer*, *supra*, 80 Cal.App.4th at p. 1389, original italics.) Moreover, a disabled employee seeking reassignment to a vacant position "is entitled to preferential consideration." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 265; Cal. Code Regs., tit. 2, § 11068, subd. (d)(5) ["The employee with a disability is entitled to preferential consideration of reassignment to a vacant position over other applicants and existing employees"].)

To meet its initial burden on Swanson's failure to accommodate claims, the District therefore had to present evidence showing the second grade position Swanson sought was not available or otherwise was not a reasonable accommodation, or the fifth grade or kindergarten assignments the District offered were reasonable accommodations that would have allowed Swanson to adequately perform her essential job functions. The District produced no such evidence. Instead, the District faults Swanson for failing to produce evidence showing the second grade assignment was a reasonable

18

accommodation, but Swanson had no burden to do so because the District failed to meet its initial burden.

Finally, the District contends school districts would suffer undue hardship if teachers could choose their own teaching assignments. This misstates Swanson's position. Swanson sought a specific assignment as an accommodation for her cancer-related conditions, not simply because she liked that assignment. Moreover, the District failed to present any evidence to show that granting Swanson's request to teach second grade would impose an undue hardship on the District. Thus, the District's undue hardship argument fails to meet its initial burden on summary judgment.

3.   The District Failed to Meet Its Initial Burden to Negate an Essential Element of Swanson's Interactive Process Claim

a.   *Governing Interactive Process Principles*

The FEHA makes it "an unlawful employment practice . . . [¶] . . . [¶] [f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." (§ 12940, subd. (n).) Although the interactive process is an informal process designed to identify a reasonable accommodation that will enable the employee to perform his or her job effectively (*Scotch*, *supra*, 173 Cal.App.4th at p. 1013), an employer's failure to properly engage in the process is separate from the failure to reasonably accommodate an employee's disability and gives rise to an independent cause of action (*Gelfo*, *supra*, 140 Cal.App.4th at p. 61).

The employee must initiate the process unless his or her disability and the resulting limitations are obvious. Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith. (*Scotch*, *supra*,

19

173 Cal.App.4th at p. 1013.)  "Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.'  [Citation.]  'Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party.  Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.'  [Citation.]"  (*Id*. at p. 1014.)

"[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability . . . .  If the employer is responsible for a later breakdown in the process, it may be held liable." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 985.)

b.    *The Parties' Contentions and Evidence on Swanson's Interactive Process Claims*

Swanson alleges the District failed to engage in the interactive process because it would not discuss which teaching assignment reasonably would accommodate her cancer-related conditions and compromised immune system.  According to Swanson, she needed an assignment that would minimize the amount of extra work required beyond the workload of her previous assignment and also an assignment that did not expose her to the many viral infections that flourish in kindergarten classes.  Swanson alleges the District unilaterally transferred her from her reading specialist position to a fifth grade position, and then transferred her to a kindergarten position without considering or discussing her request for a second grade assignment.

The District contends Swanson's interactive process claims fail because it engaged in the interactive process by switching her from fifth grade to kindergarten when she objected to the fifth grade assignment.  That contention is not adequate to satisfy the District's initial burden on summary judgment.  The FEHA required the District to engage in an ongoing dialogue regarding the accommodations Swanson believed she

20

needed to mitigate her cancer-related conditions, but the District failed to present any evidence to show it engaged Swanson in such a dialogue. For example, the District offers no evidence to show it discussed with Swanson the second grade assignment she sought or provided any explanation why it could not grant her request as a reasonable accommodation. To the contrary, the evidence shows the District simply assigned Swanson to teach kindergarten and failed to engage in any further discussion with her. Accordingly, the trial court erred in granting summary judgment on the interactive process claims.

## III

### DISPOSITION

The judgment is reversed. Swanson shall recover her costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

Filed 12/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAURALYN SWANSON,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>MORONGO UNIFIED SCHOOL<br>DISTRICT, et al.,<br><br>  Defendants and Respondents. | G050290<br><br>(Super. Ct. No. CIVMS900938)<br><br>ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION FOR<br>PUBLICATION; NO CHANGE IN<br>JUDGMENT |

It is ordered that the opinion filed in the above-entitled matter on November 26, 2014, is hereby MODIFIED as follows:

1.  On page 2, the first sentence of the second paragraph, beginning with "The District sought summary judgment," delete the word "because" and replace it with a comma followed by the word "asserting," and delete the words "perform to" and replace them with the word "satisfy" so the sentence reads:

> The District sought summary judgment on Swanson's discrimination claim, asserting it elected not to renew her probationary teaching contract for the

legitimate, nondiscriminatory reason she failed to satisfy the District's teaching standards.

2. On page 2, the second sentence of the third paragraph, beginning with "Swanson established a triable issue," delete the word "her" between the words "provide" and "the resources" and insert the word "she" between the words "resources" and needed" so the sentence reads:

Swanson established a triable issue of material fact on her discrimination claim by presenting evidence supporting her theory the District changed her teaching assignments and failed to provide the resources she needed to succeed so it would have a basis for not renewing her contract.

3. On page 3, the first complete sentence of the partial paragraph at the top of the page, beginning with "The District also failed," insert the word "Swanson" between the words "engaged" and "in," delete the word "dialog" and replace it with the word "dialogue," and delete the words "with Swanson" between the words "dialog" and "regarding" so the sentence reads:

The District also failed to meet its initial burden on the interactive process claim because it failed to present any evidence showing it engaged Swanson in an ongoing dialogue regarding her requested accommodations.

4. On page 3, the first sentence of the first full paragraph, beginning with "Swanson is an elementary school teacher," delete the words "more than" and replace them with the word "over," and delete the word "years" and replace it with the word "years'" so the sentence reads:

Swanson is an elementary school teacher with over 30 years' experience teaching kindergarten through sixth grade.

5. On page 4, the second sentence of the first full paragraph, beginning with "She delayed those treatments," delete the word "the" between the words "and" and

2

instructional," and delete the phrase "the substitute teacher who would take her place" and replace it with the phrase "her replacement" so the sentence reads:

> She delayed those treatments so she could prepare lesson plans and instructional materials for her replacement while she was on leave.

6. On page 4, the third sentence of the second full paragraph, beginning with "If she was to be reassigned," delete the phrase "was to be" and replace it with the word "were," and delete the phrase "requested Lowe assign her to" and replace it with the phrase "asked if she could fill" so the sentence reads:

> If she were reassigned, Swanson asked if she could fill an opening at the second grade level because she recently had taught that grade at a different school.

7. On page 4, the fourth sentence of the second full paragraph, beginning with "Lowe, however, assigned another teacher," delete the word "assigned" and replace it with the phrase "gave that opening to," delete the phrase "to the second grade opening," and insert the word "instead" between the words "and" and "assigned" so the sentence reads:

> Lowe, however, gave that opening to another teacher and instead assigned Swanson to teach a kindergarten class even though he knew she had not taught kindergarten in nearly 30 years.

8. On page 5, the second sentence of the first full paragraph, beginning with "Before the observation dates," delete the phrase "the observation dates" and replace it with the phrase "Lowe's observations," and delete the word "Lowe" between the words "asked" and "to" and replace it with the word "him" so the sentence reads:

> Before Lowe's observations, Swanson asked him to provide her with the District's preevaluation format for the lessons she would teach.

9. On page 5, the third sentence of the first full paragraph, beginning with "The preevaluation format provides," delete the word "provides" and replace it with

3

the word "describes," delete the word "is" between the words "and" and "customarily," and insert the word "is" between the words "customarily" and "given" so the sentence reads:

> The preevaluation format describes the District's expectations for each lesson and customarily is given to teachers before they are observed.

10. On page 5, the final sentence of the first full paragraph, beginning with "Lowe evaluated Swanson's performance," delete the phrase "to correct the deficiencies in her teaching performance" so the sentence reads:

> Lowe evaluated Swanson's performance on each lesson as poor and gave her the option to either resign her teaching position or accept a remediation plan.

11. On page 5, the second sentence of the second full paragraph, beginning with "The plan also included," delete the word "included" and replace it with the phrase "Swanson offered," and delete the phrase "for Swanson" so the sentence reads:

> The plan also offered Swanson the opportunity to obtain assistance in addressing her deficiencies before the second round of observations.

12. On page 5, the final sentence of the second full paragraph, beginning with "Instead, Swanson was allowed to observe," insert the phrase "observations unhelpful because the" between the words "found the" and "students," delete the phrase "to be" and replace it with the word "were," and delete the phase "her students and therefore the observations were not helpful" and replace it with the word "hers" so the sentence reads:

> Instead, Swanson was allowed to observe two other kindergarten teachers in the District, but she found the observations unhelpful because the students in those classes were very different from hers.

4

13. On page 6, the first sentence of the first paragraph, beginning with "Without providing any feedback," delete the phrase "her teaching position" so the sentence reads:

Without providing any feedback, Lowe asked Swanson to resign in lieu of receiving a "non-re-elect" notice.

14. On page 6, the second sentence of the second paragraph, beginning with "Swanson requested the District," delete the phrase "prejudiced against her" and replace it with the word "biased" so the sentence reads:

Swanson requested the District assign an administrator other than Lowe to conduct the observation because she believed he was biased.

15. On page 7, the second sentence of footnote number 2, beginning with "Swanson voluntarily dismissed," delete the phrase "and also Lowe and Weller" so the sentence reads:

Swanson voluntarily dismissed the harassment and defamation causes of action before the trial court's summary judgment ruling.

16. On page 7, in footnote number 2, insert the following new sentence between the sentences beginning with "Swanson voluntarily dismissed" and "She does not challenge":

She also dismissed defendants Lowe and Weller.

17. On page 14, clause number (7) of the partial paragraph at the top of the page, beginning with "(7) Lowe told Swanson the District wanted him," delete the phrase "second series of teacher observations" and replace it with the phrase "follow-up evaluations" so the clause reads:

(7) Lowe told Swanson the District wanted him to make a determination on her employment status before he had time to complete the follow-up evaluations;

5

18. On page 14, clause number (9) of the partial paragraph at the top of the page, beginning with "(9) the District's Board of Education voted," delete the phrase "all of the observations were conducted" and replace it with the word "evaluations" so the clause reads:

(9) the District's Board of Education voted not to renew Swanson's contract *before* she completed the remediation plan and evaluations.

19. On page 18, the first full sentence of the partial paragraph at the top of the page, beginning with "Swanson alleged any other new teaching assignment," delete the phrase "the effect of," and delete the word "her" between the words "for" and "new" and replace it with the word "a" so the sentence reads:

Swanson alleged any other new teaching assignment would require additional time to prepare and plan lessons, but her cancer treatments jeopardized her ability to prepare for a new assignment.

20. On page 20, the second sentence of the second full paragraph, beginning with "According to Swanson," delete the phrase "viral infections" and replace it with the word "illnesses" so the sentence reads:

According to Swanson, she needed an assignment that would minimize the amount of extra work required beyond the workload of her previous assignment and also an assignment that did not expose her to the many illnesses that flourish in kindergarten classes.

21. On page 20, the first sentence of the third full paragraph, beginning with "The District contends Swanson's interactive process claims fail," delete the phrase "Swanson's interactive process claims fail because" so the sentence reads:

The District contends it engaged in the interactive process by switching her from fifth grade to kindergarten when she objected to the fifth grade assignment.

These modifications do not change the judgment.

6

The California Employment Lawyers Association has requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

ARONSON, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.