Filed 4/1/21  Datomi v. Huntington Memorial Hospital CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FARNAZ DATOMI, | B295054 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC683329) |
| v. | |
| HUNTINGTON MEMORIAL HOSPTIAL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

Law Offices of Victor L. George, Victor L. George and Wayne C. Smith; Esner, Chang & Boyer, Shea S. Murphy for Plaintiff and Appellant.

Littler Mendelson, Monica M. Quinn, and Jacob Krall for Defendant and Respondent.

_____

Farnaz Datomi sued her employer, Pasadena Hospital Association dba Huntington Memorial Hospital (Huntington or the hospital) for wrongful termination, alleging the hospital discharged her in retaliation for her complaints about improper practices. The trial court concluded no triable issue existed as to whether Datomi's discharge was retaliatory, and granted the hospital's motion for summary judgment. We affirm.

## BACKGROUND

### A. Datomi's Employment

Datomi worked as Huntington's Director of Risk Management from April 2012 until her termination on July 17, 2017. Her duties included resolving patient complaints and reporting potential safety issues and regulatory noncompliance to her supervisors and the California Department of Health. Datomi was never disciplined during her tenure at Huntington, but on the contrary received positive performance reviews and merit bonuses.

The hospital adopted administrative polices and procedures with which its employees were obligated to comply. Policy No. 156 restricted access to patient records to the patient and her authorized representative. Policy No. 013 prescribed ethical and professional standards. Policy No. 840.3 established a code of conduct and demanded compliance with patient privacy laws.

On June 22, 2017, L.M., Datomi's friend, was admitted to the hospital's emergency department. On June 23, L.M. asked Datomi for her medical records, and signed a release form to obtain them. Datomi conversed with Charlotte Landon, a nurse, about obtaining the records.

Stephanie Garcia, a nurse, later complained to Terence Ou, the hospital's Compliance Officer, that Datomi had tried to coerce

2

Landon into obtaining L.M.'s medical records, a violation of both hospital policy and the Health Insurance Portability and Accountability Act (HIPAA).

On June 29, 2107, Ou opened an investigation into the allegation. A week later, on July 6, 2017, Huntington suspended Datomi pending the outcome of Ou's investigation.

Ou interviewed Datomi on July 6, 2017, who reported that Landon had refused to facilitate L.M.'s request for medical records. When L.M. asked Landon for help in obtaining the records, Landon dismissively said, "we don't do that."

On July 17, 2017, Huntington terminated Datomi's employment for violation of hospital policies concerning patient privacy.

## B.    Summary Judgment

Datomi sued Huntington, asserting causes of action for retaliation and wrongful termination in violation of public policy.[1] She alleged that the hospital discharged her because she had made complaints about Landon, Garcia, and a Dr. Verrette.

Huntington moved for summary judgment, arguing it discharged Datomi for abusing her authority and intimidating hospital staff in order to obtain L.M.'s medical records in violation of hospital policies.

Huntington supported the motion with copies of hospital polices and excerpts from the deposition testimony of Datomi, Ou, Sylvia Montes, and Gloria Sanchez-Rico. Policy No. 156 required that a patient's request for medical records go through the hospital's Medical Records Department. Policy No. 013 directed

---

[1] Datomi also asserted a cause of action for national origin discrimination, but abandons it on appeal.

employees to avoid conflicts of interest or the appearance of a conflict of interest. Policy No. 840.3 directed employees to demonstrate respect to one another, and to refrain from intimidating employees or using condescending language.

Ou testified that he was informed Datomi sought to obtain a copy of L.M.'s CT scan. Landon told him that Datomi tried to intimidate her, and other staff said Datomi tried to leverage her position as a hospital director to obtain L.M.'s records. Ou testified that the decision to terminate Datomi's employment for violation of Polices Nos. 156, 013 and 840.3 was made collectively by Gloria Sanchez-Rico, the hospital's Senior Vice President and Chief Nursing Officer, Jim Noble, the Chief Operating Officer, and Steve Ralph, the Chief Executive Officer. The group considered imposing lesser discipline, but in the end concluded that because Datomi was a director, she should be held to a high standard.

Datomi argued in opposition to Huntington's motion that the hospital terminated her employment due to her complaints about Landon, Garcia and Varrette. She argued that she did not attempt to obtain L.M.'s medical records, and never possessed or reviewed them. She merely helped L.M. obtain them for herself, and never coerced Landon to obtain them.

The trial court found that Huntington articulated a nonretaliatory reason for discharging Datomi, and Datomi failed to rebut this showing or present evidence supporting a nexus between any protected action and her discharge. The court stated that Huntington "has established the investigation into [Datomi] was opened on June 29, 2017[, but it] was undisputed that on that date plaintiff had not made any complaint to a person with authority over any employee with the authority to

4

investigate the incident of June 23." Accordingly, the court granted Huntington's motion and entered judgment for the hospital.

## DISCUSSION

Observing that the adverse employment action in this case occurred not on June 29, 2017, when Ou opened the hospital's investigation, but July 17, 2017, when she was fired, Datomi contends the evidence raised a triable issue as to whether a causal link existed between her protected activity and the adverse employment action. This is so, she argues, because the evidence indicated that she complained to Ou about Landon on July 7, 2017, and had made several previous complaints about other employees.

### A. Legal Principles

Labor Code section 1102.5 makes it unlawful for an employer to "retaliate against an employee for disclosing information . . . to a person with authority over . . . another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." (Lab. Code, § 1102.5, subd. (b).)

Health and Safety Code section 1278.5 makes it unlawful for a health facility to retaliate against an employee for having "[p]resented a grievance, complaint, or report to the facility." (Health & Saf. Code, § 1278.5, subd. (a)(1)(A).)

To state a claim for retaliation, a plaintiff must show (1) she engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) there is a causal link

5

between the protected activity and the adverse action. (Gov. Code, § 12940, subd. (h); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

Because direct evidence of an unlawful retaliation is seldom available, courts use a system of shifting burdens to aid in the presentation and resolution of such claims at trial. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) To establish a prima facie case of retaliation, the employee must demonstrate that the employer had a retaliatory motive for an adverse employment action. The employer may rebut the showing by producing admissible evidence that it discharged the employee for a legitimate nonretaliatory reason. If it does so, the burden shifts to the employee to produce substantial evidence that the employer's justification for its decision is either untrue or pretextual or that the employer acted with retaliatory animus. (See *id.* at pp. 355-356.)

In the context of a motion for summary judgment, " 'the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, [nonretaliatory] factors.' " (*Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, 558-559.) A legitimate reason is one that is facially unrelated to retaliation, and which, if true, "would thus preclude a finding of [retaliation]." (See *Guz, supra*, 24 Cal.4th at p. 358.) Making this showing is " 'not an onerous burden [citation], and is generally met by presenting admissible evidence showing the defendant's reason for its employment decision [citation].' " (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 965 (*Swanson*).)

6

When the employer satisfies its initial burden with evidence that negates the plaintiff's prima facie case or establishes a legitimate nonretaliatory reason for the discharge, the burden shifts to the employee to offer substantial evidence that the employer's stated reasons are " 'untrue or pretextual, or evidence the employer acted with a [retaliatory] animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional [retaliation].' " (*Swanson*, *supra*, 232 Cal.App.4th at p. 966.)

To satisfy this burden, the employee may not "simply deny the credibility of the employer's witnesses" or speculate as to retaliatory motive. (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 862.) Nor is it enough to show that the employer's reasons were unsound, wrong, or mistaken; the employee has brought an action for retaliation, not general unfairness. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) Rather, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," ' " and hence infer that the employer did not act for the asserted nonretaliatory reason. (*Ibid.*) If, "considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was [retaliatory]," the employer is entitled to summary judgment. (*Guz, supra*, 24 Cal.4th at p. 361.)

But "evidence that the employer's claimed reason is *false*— such as that it conflicts with other evidence, or appears to have been contrived after the fact—will tend to suggest that the

employer seeks to conceal the real reason for its actions, and this in turn may support an inference that the real reason was unlawful." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 715.)

On appeal, we apply an independent standard of review to determine whether a trial is required—whether the evidence favoring and opposing the summary judgment motion would support a reasonable trier of fact's determination in the plaintiff's favor on the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) In doing so we view the evidence in the light most favorable to the party opposing summary judgment. (*Id.* at p. 843; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.) We accept as true the facts shown by the evidence offered in opposition to summary judgment and the reasonable inferences that can be drawn from them. (*Spitzer v. The Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385-1386.)

**B.    Application**

As discussed above, an employer has the initial burden on summary judgment to establish either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based on a nonretaliatory reason. Here, Huntington adduced evidence that Datomi engaged in no protected activity and that her complaint to Ou had no causal nexus to her termination. It also presented evidence that its reason for discharging Datomi was nonretaliatory.

**1.    Protected Action**

Labor Code section 1102.5 makes it unlawful for an employer to "retaliate against an employee for disclosing information . . . if the employee has reasonable cause to believe

that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (Lab. Code, § 1102.5, subd. (b).)

Health and Safety Code section 1278.5 makes it unlawful for a health facility to retaliate against an employee for having "[p]resented a grievance, complaint, or report to the facility." (Health & Saf. Code, § 1278.5, subd. (a)(1)(A).)

Datomi argues she told Ou that Landon refused to help L.M. obtain her medical records, but the evidence she cites in support indicates only that Datomi testified she "thinks" she "might" have told Ou that Landon was dismissive of L.M.'s request. When asked in her deposition whether Landon had refused to facilitate L.M. obtaining her medical records, Datomi testified, "I think I might have said [Landon] was dismissive because of—like 'we don't do that.' So not—you know, not compassionate. . . . Not helpful." Datomi cites no statute or regulation obligating a nurse to be solicitous of requests for medical records.

Nor does Datomi's statement to Ou constitute a "grievance, complaint, or report" for purposes of Health and Safety Code section 1278.5. Setting aside that Datomi only "thinks" she "might" have told Ou about Landon, she relayed nothing that Landon actually said to L.M. The phrase "like 'we don't do that' " characterized only Landon's attitude, not any statement she made. And Datomi made the characterization not as part of any report, but only to explain her own actions to Ou.

Datomi argues she made several disclosures to her supervisors about patient health and safety concerns going back

9

10 years before her termination. She notified the hospital of patient safety issues stemming from a patient's death in Garcia's unit in April 2007, when Garcia violated Huntington's policy by failing to advise risk management about the death. And earlier in 2017 Datomi reported issues concerning Garcia to the Department of Public Health related to hospital acquired pressure injuries. Datomi referred to a pediatric patient issue as a "sentinel event" to Dr. Verrette, who became upset at the use of the term, and raised patient safety issues about Dr. Verrette regarding hospital acquired conditions and the accuracy of the reporting. Datomi complained to Ortega about infections from endoscopes regarding a procedure called ERCP, and raised concerns with Ortega about Dr. Verrette.

Datomi's position as Director of Risk Services was to resolve patient complaints and report potential safety issues and regulatory noncompliance to her supervisors and the California Department of Health. Routine reports made as part of one's job duties arguably qualify as protected activity under Labor Code section 1102.5, but not for purposes of Health and Safety Code section 1278.5. (See *Melamed v. Cedars-Sinai Medical Center* (2017) 8 Cal.App.5th 1271, 1289 [routine reports fail to satisfy Health & Saf. Code, § 1278.5].)

We conclude a triable issue exists as to whether Datomi's reports as part of her job duties qualified as protected activity for purposes of Labor Code section 1102.5, but not Health and Safety Code section 1278.5, and no triable issue exists as to whether her statements to Ou constituted protected activity under either statute.

## 2. Nexus

No triable issue exists regarding a causal connection between any report made by Datomi—either to Ou or as part of her job duties—and her termination. Her earlier reports to supervisors about patient health and safety concerns resulted not in disciplinary action, but in positive reviews and performance bonuses. And Datomi's report to Ou about Landon's unhelpful attitude came only after she was already under investigation for violating patient privacy policies. Nothing suggests that the course of Ou's investigation changed when Datomi told him (if she did so) that Landon had been unhelpful.

Ou's report and deposition testimony indicated that the hospital discharged Datomi because it determined that she violated hospital policy by calling on a nurse to make a copy of L.M.'s CT scan. Ou testified he received a complaint about Datomi's attempt to access L.M.'s medical records, found the allegation was well grounded, and recommended, with several others, that Datomi's employment be terminated.

Even if this decision was incorrect, it was not unlawful. (See *Hersant v. Department of Social Services*, *supra*, 57 Cal.App.4th at p. 1005 [a showing that the employer's reasons were unsound, wrong, or mistaken raises no triable issue; the employee has brought an action for retaliation, not general unfairness].) Datomi presents no evidence that if credited would establish that the hospital's rationale for her discharge was so weak, implausible, inconsistent, incoherent or contradictory as to give rise to a reasonable inference that the explanation is unworthy of credence. (*Ibid*.)

11

We conclude no triable issue exists as to whether Datomi's reports to Ou and others caused her termination. Therefore, summary judgment was appropriate.

## DISPOSITION

The judgment is affirmed. Respondent is to receive its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.