Filed 9/22/15  Butler v. Rio Hondo Community College Dist. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CATHY BUTLER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RIO HONDO COMMUNITY COLLEGE DISTRICT et al.,<br><br>    Defendants and Respondents. | B257748<br><br>(Los Angeles County<br>Super. Ct. No. VC061881) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Yvonne T. Sanchez, Judge.  Reversed.

Law Offices of Vera & Barbosa and Ronald T. Vera for Plaintiff and Appellant.

Gibeaut, Mahan & Briscoe, Gary R. Gibeaut, Nancy Mahan-Lamb, John W. Allen and Julie A. Mullane for Defendants and Respondents.

_____

In this employment retaliation case under The Reporting by Community College Employees of Improper Governmental Activities Act (Act) (Ed. Code, § 87160 et seq.),[1] Cathy Butler (Butler) appeals from the summary judgment entered in favor of Rio Hondo Community College District (District), Henry Gee (Gee) and Yolanda Emerson (Emerson). According to Butler, the trial court improperly granted summary judgment because there are triable issues as to whether she engaged in protected activity, and whether there was a causal connection between that protected activity and the nonrenewal of her yearly contract. Upon review of the record, we conclude that Butler is correct and the judgment must be reversed.

## FACTS

Butler filed a third amended complaint (TAC) alleging she had been retaliated against in violation of the Act because she reported to her superiors that a subordinate "may have falsely prepared an invoice authorizing payment of monies to an individual who was not allowed to receive" them.[2]

The District, Gee and Emerson sought summary judgment on the grounds that Butler did not engage in protected activity. They argued that this case involved the report of an internal personnel matter rather than a violation of the law, and therefore the report was not protected under the Act. In addition, they argued that there was no causal connection between Butler's report of a subordinate's misconduct and the District's nonrenewal of Butler's yearly contract.

According to the District, Emerson and Gee's separate statement: Butler's job responsibilities included being the advisor to the Associated Student Body (ASB) and overseeing ASB fund requisition. In June 2011, a clerk in the Student Services Department informed Butler that her subordinate, Hannah Pastrano (Pastrano), had issued

---

[1]     All further statutory references are to the Education Code unless otherwise indicated.

[2]     Butler also alleged that she was retaliated against in violation of Labor Code section 1102.5. In her opening appellate brief, she states that she "chose not to seek relief under" that Labor Code section.

a suspicious ASB requisition, which appeared to violate District policies. Pastrano admitted to Butler that the requisition had not been approved by the Inter-Club Council, and she had falsified minutes to reflect otherwise. Butler reported the matter to her supervisors, including Gee and Emerson, which resulted in Pastrano being placed on administrative leave.

Emerson completed her internal investigation, and then retained an outside investigator, Douglas Brenn (Brenn), to conduct an independent investigation into Pastrano's alleged misconduct. Brenn's extensive audit report concluded that Pastrano had been making unauthorized disbursements since 2009. Subsequently, in August 2011, she resigned.

Butler took a leave of absence from September 8, 2011, to September 22, 2011. She claims she was pressured to do so by District administrators. At some point during the Pastrano investigation, Emerson had discovered that Butler had improperly approved certain ASB requisitions. This prompted Emerson to review ASB records to determine if Butler had engaged in any misconduct. Sometime after Pastrano's resignation, Pastrano contacted Emerson and stated that Butler had made errors in ASB documentation. Emerson completed her review of ASB requisition records in September 2011 and concluded that Butler may have falsified ASB documentation. When Emerson asked to meet with Butler, she said she would not appear at any meeting without an attorney paid for by the District. The District refused to pay for Butler's attorney. On September 26, 2011, Butler and her attorney attended a meeting with Emerson and Gee and denied any misconduct. Butler was placed on paid administrative leave pending the outcome of an investigation.

Once again, Emerson hired Brenn to conduct an investigation. He completed it in December 2011, concluding that Butler had a pattern dating back to 2009 of making errors in ASB requisitions. The errors implicated potential violations of the Ralph M.

Brown Act[3] (Brown Act) insofar as ASB agendas did not correctly reflect the actions of the ASB Governing Board.

Prior to June 2011, Gee had met with Butler on two occasions to discuss her job performance and productivity. On both occasions, according to Gee, Butler responded to criticism by offering her resignation.

When Butler was on administrative leave, her temporary replacement, Mike Munoz (Munoz), completed two assignments in two months. These were assignments Butler had failed to complete in over two years. In addition, Munoz implemented a Student Leadership Institute Program, an assignment that Butler had also failed to complete.

With the input of Gee and Emerson, District President Ted Martinez (Martinez) made the decision to recommend to the District's Board of Trustees that Butler's contract not be renewed. The decision not to renew Butler's contract for the 2012-2013 school year was based on four factors: (1) ongoing concern about her job performance; (2) Butler having twice offered to resign as a response to constructive feedback; (3) her failure to effectively supervise Pastrano; and (4) investigation results uncovering Butler's errors in ASB requisitions.

In April 2012, Butler filed a whistleblower retaliation complaint with the State Personnel Board pursuant to the Act. The State Personnel Board issued a decision denying all relief requested by Butler.

The separate statement was supported by declarations from Emerson, Gee, Martinez and attorney John W. Allen (Allen).

In opposition to the motion, Butler argued, inter alia, that there were triable issues as to whether she was a poor performing employee, whether she offered to resign and

---

[3]    The Brown Act is at Government Code section 54960.1 et seq. It requires a legislative body of a local agency to post an agenda 72 hours before regular meetings. In general, no action or discussion can be taken with respect to any item not appearing on the posted agendas. (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1181; Gov. Code, § 54954.2, subd. (a).)

4

whether she made errors in ASB requisitions. She supported her opposition with three declarations of her own.

The trial court granted the motion for summary judgment. In its tentative ruling, which it adopted, the trial court stated, "Whistleblowing does not include carrying out a supervisor's regular job duties of reporting misconduct of a subordinate employee." Then, in the concluding paragraph, the trial court stated, "Although [Butler] . . . submitted her own declarations contesting [the District, Emerson and Gee's] reasons for their decision not to renew her one-year contract, [Butler] proffered no argument (or evidence) supporting that her disclosure was protected under the Education Code. As such, she failed to meet her burden[.]"[4]

This appeal followed.

## DISCUSSION

### I. Standard of Review.

"We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'" [Citation.] 'In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the

---

[4] The trial court's ruling contained some discussion of the evidence submitted by the parties. It is unclear what the trial court concluded. At one point, it noted that Emerson declared that an investigation revealed that Butler had "a pattern of errors," and seemed to conclude that one sentence in one of Butler's declarations about accounting department records failed to create a triable issue as to the existence of errors. While the trial court apparently faulted Butler for not providing Accounting Department records, it apparently did not fault the District, Emerson and Gee for failing to provide documentation of the purported "errors." On the topic of purported errors, the trial court did not discuss anything else that Butler said in her declarations. Continuing on, the trial court said that the District, Emerson and Gee "proffered evidence of what they characterize as [Butler's] poor performance, including her inability to supervise Pastrano," but then acknowledged that Butler "disputes those opinions through her own declaration."

5

moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue.' [Citation.]" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.) The moving papers are strictly construed, while the opposition is liberally construed in the most favorable light. Moreover, doubts about the propriety of granting summary judgment must be resolved in favor of denying it. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083.)

## II. The Act.

To protect whistleblowers, the Act provides: A "person who intentionally engages in acts of . . . retaliation . . . against an employee . . . for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party." (§ 87164, subd. (h).) "In any civil action . . . , once it has been demonstrated by a preponderance of evidence that an activity protected by this article was a contributing factor in the alleged retaliation against a . . . current . . . employee, the burden of proof shall be on the . . . school administrator . . . or public school employer to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in protected disclosures[.]" (§ 87164, subd. (j).)

Under the Act, a "'protected disclosure' means a good faith communication that discloses . . . information that may evidence," inter alia, improper governmental activity. (§ 87162, subd. (e).) Improper governmental activity means "an activity by a community college or by an employee that is undertaken in the performance of the employee's official duties, whether or not that activity is within the scope of his or her employment, and that meets either of the following descriptions: [¶] (1) The activity violates a state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty. [¶] (2) The activity is economically wasteful or involves gross misconduct, incompetency, or inefficiency." (§ 87162, subd. (c).)

6

Butler contends that an employee's report of improper governmental activities to a superior constitutes protected activity. This issue was essentially resolved in *Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832 (*Mize-Kurzman*). In that case, the plaintiff sued under the Act and Labor Code section 1102.5[5] and alleged she was retaliated against for reporting illegal conduct at a community college district to her supervisors. (*Mize-Kurzman*, *supra,* at pp. 839–842.) The trial court instructed the jury, inter alia, that "[i]nformation passed along to a supervisor in the normal course of duties is not a protected disclosure[.]" (*Id*. at p. 849.) The reviewing court reversed as to the claims arising under the Act as well as Labor Code section 1102.5. (*Mize-Kurzman, supra,* at p. 856.) In analyzing the issues presented, the court noted that Labor Code section 1102.5, subdivision (e) provides that a "report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)." The court did not engage in separate examination of any of the statutory language in the Act. It did, however, state that "nothing in the legislative history of the pertinent statutes or the case authorities indicates that the terms 'disclosing information' and 'a disclosure of information' in Labor Code section 1102.5 and 'protected disclosure' in [section 87162] were intended to have significantly different meanings." (*Mize-Kurzman*, *supra*, at p. 848.)

We interpret section 87162 in a manner consistent with *Mize-Kurzman*. When interpreting a statute, we must determine the Legislature's intent to effectuate the

---

[5]   Labor Code section 1102.5, subdivision (b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

7

statute's purpose. (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1143.) What is the intent of the Act? Notably, section 87161 provides: "It is the intent of the Legislature that community college employees and other persons disclose, to the extent not expressly prohibited by law, improper governmental activities." A review of the definition of protected disclosure reveals that the only limitation is that it must be made in good faith. The language brooks no other limitation. Based on the plain language of the statutory scheme, it is apparent that the Legislature intended to protect disclosures designed to end improper governmental activities. An employee's report to a supervisor is often the quickest path to bring those activities to an end. Consequently, we conclude that a nonoffending employee who reports improper governmental activities to a supervisor can seek protection under the Act.

## III. Relevant Law For Retaliation Cases.

Traditionally, employment cases under the Fair Employment and Housing Act and the Civil Rights Act of 1964[6] have held that "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ""'drops out of the picture,'"" and the burden shifts back to the employee to prove intentional retaliation. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

"Both direct and circumstantial evidence can be used to show an employer's intent to retaliate. 'Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive. [Citation.]' [Citation.] Circumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of

---

[6] Title 42 of the United States Code section 2000e et seq.

events, and how the plaintiff was treated in comparison to other workers.  [Citations.]" (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1153.)

The framework for civil rights cases was developed for use at trial, not summary judgment.  (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 965 (*Swanson*).)  Summary judgment law shifts the initial burden around and places it on a moving party defendant to "negate an element of the plaintiff's claim or establish a complete defense to the claim.  [Citation.]" (*Swanson*, *supra*, at pp. 965–966.)  "An employer defendant may meet its initial burden on summary judgment, and require the employee plaintiff to present evidence establishing a triable issue of material fact, by presenting evidence that *either* negates an element of the employee's prima facie case, or establishes a legitimate [nonretaliatory] reason for taking the adverse employment action against the employee." (*Id*. at p. 966.)

"'[T]o avoid summary judgment [once the employer makes the foregoing showing], an employee claiming [retaliation] must offer substantial evidence that the employer's stated [nonretaliatory] reason for the adverse action was untrue or pretextual, or evidence the employer acted with a [retaliatory] animus, or a combination of the two[.]'" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160.)  An employee cannot simply show that an employer's action was wrong or mistaken.  Rather, "'the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [the asserted] non-discriminatory reasons." [Citations.]' [Citations.]" (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.)

We opt to apply this traditional framework to Butler's case under the Act. However, a wrinkle must be added.

In all practical effect, the Legislature created an affirmative defense when it adopted section 87164, subdivision (j).  Once the plaintiff proves by a preponderance of the evidence that her protected activity was a contributing factor to adverse action taken

9

by the employer, then the burden shifts to the employer to prove by clear and convincing evidence that the adverse action would have occurred for independent, legitimate reasons even if the employee had not engaged in protected disclosures. The question is how the statute impacts summary judgment.

When plaintiffs have the burden of proving issues at trial by clear and convincing evidence, courts have held that those plaintiffs cannot defeat summary judgment or adjudication by offering evidence on those issues unless they meet the clear and convincing standard. (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 252 [plaintiff opposing summary judgment in a defamation case against a magazine and a journalist had to produce clear and convincing evidence of actual malice]; *Basich v. Allstate Ins. Co.* (2001) 87 Cal.App.4th 1112, 1121 [plaintiff opposing a motion for summary adjudication regarding punitive damages must submit evidence satisfying the clear and convincing standard].) By logical extension, a defendant seeking summary judgment on a section 87164, subdivision (j) affirmative defense must satisfy the clear and convincing standard. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 (*Aguilar*) ["how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial"].)

## IV. Triable Issues Exist.

The TAC avers that Butler engaged in protected activity by reporting that Pastrano may have authorized payment of money to an unauthorized person. Such misconduct, on its face, qualified as either corruption, malfeasance, theft of government property, fraud, conversion, economically wasteful misconduct, gross misconduct, incompetency, or inefficiency.[7] The TAC further shows that Butler suffered adverse employment action

---

[7] To support its conclusion that whistleblowing does not include carrying out a supervisor's regular job duties of reporting misconduct of a subordinate employee, the trial court cited *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378 (*Patten*). *Patten* stated that Labor Code section 1102.5 did not protect the reporting of internal personnel matters, and therefore held, inter alia, the statute did not offer protection when the plaintiff disclosed complaints by students of inappropriate conduct

because her yearly contract was not renewed, and there was an indicia of retaliatory animus due to the proximity of her protected activity and the adverse employment action. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 868 [a showing of temporal proximity is sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action]; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 [same].)  Thus, the TAC alleges a prima facie case of retaliation.

Below, the District, Emerson and Gee attempted to negate a triable issue by arguing that Butler did not engage in protected activity, and there was no causal link. Regarding the first point, the trial court ruled that the Act did not protect an employee's report to her supervisor.  Based on our interpretation of the Act, we have held otherwise and need not discuss the matter further.  Regarding the second point, we note that the evidence of Butler being placed on administrative leave soon after engaging in protected activity, and the nonrenewal of her contract, established a causal link, at least with respect to Butler's prima facie case.  Thus, the significance of the evidence offered by the District, Emerson and Gee is that it proffers a nonretaliatory reason for the decision not to renew Butler's contract.  We therefore turn to the following issues.  Did the District, Emerson and Gee meet their burden of proof?  If so, did Butler meet her burden of showing pretext or retaliatory animus?  If so, did the District, Emerson and Gee offer clear and convincing evidence that Butler's contract would not have been renewed even if she had not reported Pastrano's misconduct?

by a physical education teacher because no legal violation was involved.  (*Patten, supra,* at p. 1385.)  On the other hand, *Patten* recognized Labor Code section 1102.5 protection for the reporting of unauthorized use of public assets, and held there was a triable issue as to whether the plaintiff engaged in protected activity when she reported a transfer of funds to a surplus and reasonably believed that she had identified a violation of state or federal law.  (*Patten*, *supra*, at pp. 1385–1386.)  Because Butler reported what she suspected to be an unauthorized payment of money, *Patten* supports rather than defeats a conclusion of protected activity.

A. The District, Emerson and Gee's Evidence.

To shift the burden, the District, Emerson and Gee had to "present evidence that would *require* a reasonable trier of fact to find" that asserted facts were more likely false than true. (*Aguilar*, *supra*, 25 Cal.4th at p. 851.) In other words, they had to make a "prima facie showing of the nonexistence of any triable issue of material fact[.]" (*Id.* at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Id.* at p. 851.)

In the separate statement submitted by the District, Emerson and Gee, they stated that the decision not to renew Butler's contract for the 2012-2013 school year was based on the following four factors: (1) ongoing concern about her job performance; (2) Butler having twice offered to resign as a response to constructive feedback; (3) her failure to effectively supervise Pastrano; and (4) investigation results uncovering Butler's errors in ASB requisitions.

In support, Emerson, Gee and Martinez offered declarations.

Gee declared that prior to the Pastrano matter, his experiences with Butler were problematic. He met with her on two occasions to discuss her job performance and productivity. Each time, she offered to resign rather than accept criticism and propose constructive solutions. While Butler was on paid administrative leave in the fall of 2011, Munoz assumed Butler's duties and accomplished two tasks she had not accomplished, namely creating a Student Activities Web site for Student Government and updating the Student Activities Policies and Procedures manual. In addition, Butler took a sabbatical in 2007 to develop a Student Leadership Institute Certificate Program, but she never implemented the program. Gee asked Munoz to implement the program, and he did so within four months. Based on the foregoing, Gee concluded that Munoz, Butler's direct supervisor, effectively performed Butler's job responsibilities during the fall of 2011. Aside from those issues, Gee noted that Brenn determined that Butler had a pattern of making errors in ASB requisitions. Rebounding off that information, Gee offered the opinion that "[Butler's] mistakes . . . potentially implicated violations of the *Brown Act* as money may have been spent without being correctly agendized for public meetings."

12

In her declaration, Emerson stated that as a result of her investigation into Pastrano, she asked for ASB requisition records. Those records showed that Butler "had approved requisitions which clearly should not have been approved." Next, Emerson declared that her preliminary review of ASB records led her to believe Butler may have falsified ASB documentation. Emerson added that Brenn concluded that Butler had a pattern dating back to 2009 of making errors in ASB requisitions, agendas and minutes, and that the errors were serious in that they implicated potential violations of the Brown Act because ASB agendas did not accurately reflect the actions taken by the ASB. Last, Emerson declared: "While [Butler] was on paid administrative leave, I became aware of concerns her immediate supervisor, [Munoz], had regarding her job performance, including [Butler's] poor reaction to constructive criticism. Based on the Brenn report, I likewise had concerns regarding [Butler's] job performance, and her ineffective supervision of [Pastrano]."

According to Martinez, he relied on the recommendations of Emerson, Gee and Munoz, and on Brenn's investigation, when determining that Butler was not effective in supervising her staff, and was not properly managing the Student Services Department. Martinez lost confidence in her leadership and concluded that the District should not renew her contract. He conveyed his recommendation to the Board of Trustees, which authorized sending Butler notice that her contract of employment would not be renewed for the 2012-2013 school year.

We now assess the evidence.

In our estimation, Martinez offered solid evidence legitimizing the basis for his recommendation to the Board of Trustees.[8] And Gee provided solid evidence that Butler failed tasks, did not accept criticism and twice offered to resign. Thus, the District, Emerson and Gee offered sufficient evidence to establish two of the four reasons they advanced for not renewing Butler's contract.

_____

[8] But, of course, if Emerson and Gee acted for retaliatory reasons, and if they gave Martinez misleading information, then Martinez's recommendation was tainted. (*Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 667.)

13

The question arises whether the evidence of the other two reasons was equally as solid. It cannot be ignored that it was vague and conclusory.[9] Emerson and Gee did not provide any specifics to back up the claims attributed to Brenn or Munoz. Compounding the problem, Emerson and Gee did not provide a copy of Brenn's investigative report, nor did they provide a list or sampling of Butler's purported errors in connection with ASB requisitions. Thus, if Emerson and Gee's statements were credited, all we would know was that Butler committed "errors." We would not know whether the errors were serious and legitimate reasons for nonrenewal of Butler's contract, or whether the errors were trivial and therefore pretextual reasons. Moreover, Emerson did not elaborate on her unspecified concerns about Butler's supervision of Pastrano. Were they serious concerns? Or trivial concerns? We do not know. In light of this, we conclude that the foregoing evidence did not meet the District, Emerson and Gee's burden. As highlighted in *United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1018, "'A common defect of . . . declarations is the recital of legal conclusions or ultimate facts, instead of statements of evidentiary facts.' [Citation.]" That observation is all the more true here given that the evidence is vague.

As to whether the District, Emerson and Gee offered specific evidence of Butler's misconduct, they might assume we would consider the findings in the decision by the State Personnel Board. Any such assumption is misplaced. Though Allen attached the decision to his declaration, he did not authenticate it. "Documents used in support of a motion for summary judgment must be properly authenticated or they may not be considered." (*Callahan v. Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 606; Evid. Code, § 1401, subd. (a) ["Authentication of a writing is required before it may be

---

[9] The declarations provided by Emerson and Gee stated that Brenn determined that Butler made unspecified errors in requisitions, agendas and minutes. Also, Emerson relayed Munoz's statements regarding Butler's job performance. The statements of Emerson and Gee contained hearsay. This is so because any underlying statements by Brenn and Munoz were out of court statements offered to prove the truth of the matters asserted. (Evid. Code, § 1200.) But Butler did not object, so the evidence must be considered. (Code Civ. Proc., § 437c, subd. (c).)

14

received in evidence"].) And while their separate statement referred to the decision's conclusion, it did not refer to the decision's findings. As has been oft said, "'"if it is not set forth in the separate statement, *it does not exist*."'" [Citation.]" (*City of Pasadena v. Superior Court* (2014) 228 Cal.App.4th 1228, 1238; *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 175 [for purposes of summary judgment, "'the relevant facts are limited to those set forth in the parties' statements of undisputed facts'"].) Finally, we note that the District, Emerson and Gee did not refer to the findings in the decision, either in the trial court or on appeal, so they cannot be heard to complain (after the fact) that we did not consider them.

B. Butler's Evidence.

In counterpoint to Gee, Butler declared that she never met with him regarding her job performance and productivity, nor did she offer her resignation. She also declared that her last evaluation was completed by Daniel Rubalcava, the person who was her supervisor in 2008, and he did not mention any problems. In a prior evaluation, he stated that she had done a good job of fulfilling her duties. Further, Butler declared she created a Student Activities Web site prior to May 2008, Gee never asked her to update the Student Activities Policies and Procedures manual, and she designed an updated handbook with policies and procedures for 2010-2011 to assist club advisors and students in clubs and organizations. Finally, she declared that she advised against a Student Leadership Institute, and Gee understood her point of view. She proposed creating a Student Leadership class, which she thought was a better concept. Gee said he was not interested in such a program. As a compromise, she agreed with Gee and Rubalcava that she would plan, develop and coordinate an ASB Club Leadership Conference. The conference was held in the fall of 2009 and again in the fall of 2010. She did not speak with Gee again about the topic. In 2012, at the State Personnel Board Hearing, Butler heard for the first time that Gee recommended that her contract not be renewed for a 14th year because she had not completed the Student Leadership Institute.

As to the hearsay claim that Butler made errors in ASB requisitions, Butler responded by declaring that she reviewed all the forms that Emerson claimed contained

15

errors before they went to the accounting department at Rio Hondo College. Butler stated, "As to these documents, I was never notified from any employee in the Accounting Department that there were any errors that caused [Emerson] to state she had concerns that the Brown Act may have been violated. Any determination[] which [Emerson] made that there were errors in the paperwork, is not supported by the Accounting Department's records. The Accounting [D]epartment processed the paperwork that I reviewed according to the District's policies in place and the Accounting Department never expressed any concern to me that there were errors. If there had been errors in the paperwork, from past experience Accounting would have not processed the paperwork. I was never notified by the Accounting [D]epartment in the 13 years that I worked at Rio Hondo that there were errors in the paperwork I submitted on behalf of the student organizations."

Through her declarations, Butler controverted three of the four reasons given for the nonrenewal of her contract, and she thereby established triable issues sufficient to require denial of summary judgment. Though she did not specifically address the claim that she failed to properly supervise Pastrano, that does not undermine our analysis. As previously stated, the evidence was too weak to shift the burden on that discrete factual issue. Beyond that, evidence covering one part of a four-part justification for adverse employment action could not legitimize the justification when the other three parts of the justification are called into question.

C. The Section 87164, Subdivision (j) Affirmative Defense.

The District, Emerson and Gee did not argue below, nor do they argue on appeal, that they submitted clear and convincing evidence that they would not have renewed Butler's contract even if she did not report Pastrano. Thus, we need not determine whether they established an affirmative defense.

All other issues are moot.

16

**DISPOSITION**

The judgment is reversed.

Butler is entitled to her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ

17