Filed 11/30/15  Rosales v. Moneytree, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARA ROSALES, | |
| Plaintiff and Appellant, | G052224 |
| v. | (Super. Ct. No. RIC1213948) |
| MONEYTREE, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, David E. Gregory, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Mancini & Associates, Marcus A. Mancini, Timothy J. Gonzales; Benedon & Serlin, Gerald Serlin and Kelly R. Horwitz for Plaintiff and Appellant.

Curiale Wilson, Richard J. Curiale, Michelle T. Duval and Joseph C. Wilson for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Sara Rosales appeals from the summary judgment entered in favor of her former employer, defendant and respondent Moneytree, Inc. (Moneytree). Rosales sued Moneytree, alleging it unlawfully discriminated against her based on her repeated need for domestic violence leave. Moneytree moved for summary judgment on the ground it granted every leave request Rosales made, and terminated her employment for the nondiscriminatory reason that its investigation into stolen bus passes from the branch where Rosales worked led it to conclude Rosales was untruthful with the investigator and was the likely culprit. The trial court granted the motion, finding Moneytree presented evidence showing it terminated Rosales based on the missing bus passes and the evidence Rosales presented failed to create a triable issue on whether Moneytree acted with discriminatory animus or whether Moneytree's stated reason for terminating Rosales was a pretext for unlawful discrimination. We agree and affirm the judgment.

I

FACTS AND PROCEDURAL HISTORY

Moneytree is a national, retail financial services company that offers short-term loans, check cashing, and wire transfers. It also sells stamps and public transit system passes. Moneytree is headquartered in Seattle, Washington, and has stores in five states.

In 2007, Moneytree hired Rosales as a vault teller to work in its Riverside branch, which was a small store staffed by four to five employees located inside a supermarket. As a vault teller, Rosales had access to the vault and would provide cash and inventory to the regular tellers who interacted with the customers. Usually, two vault tellers worked each shift, but one was designated as the on-duty vault teller and only that teller had the vault key during the shift. The other vault teller would work with the regular tellers and the public. There were two shifts each day. At the start of each shift,

2

the on-duty vault teller was responsible for verifying and balancing the vault's contents by "fine counting" each bundle of cash, bus passes, stamps, and other inventory to verify they were complete.

From 2008 to March 2011, Brenda Avila was Rosales's branch manager. When Avila transferred to another branch, Jose Hernandez became Rosales's branch manager. Moneytree's branch managers lacked authority to either hire or fire employees. They reported to a district manager, who hired the employees, and oversaw employee performance issues and scheduling. The Seattle office was responsible for terminating employees based on input from the local branch and district managers. Ruby Candido was the manager for the district that included the Riverside branch.

When Rosales worked for Avila, her performance reviews reflected that she generally met expectations. Rosales received regular raises, but Avila also counseled her on more than 25 occasions for tardiness or failing to show up, exhibiting a bad attitude, and having an unprofessional appearance. Rosales also was the subject of customer service complaints, and Avila noted Rosales had refused to train a coworker, and that Rosales sometimes failed to balance either her drawer or the vault following her shift.

In 2009, Rosales first became a domestic violence victim when her boyfriend threw an object at her. Additional incidents followed and Rosales often appeared at work with scratches or bruises. Avila, aware of these incidents, provided Rosales with makeup to hide her bruises, and asked her to wear blazers or otherwise cover up any scratches or bruises so customers would not see them. Rosales's boyfriend would call or come to the branch and engage in heated arguments with her. These arguments made other employees uncomfortable prompting Avila to ask Rosales to tell her boyfriend not to come in or call unless it was an emergency.

In April 2010, Rosales called Avila and said she could not come to work because she had a black eye and swollen nose after her boyfriend assaulted her. After speaking with Candido, Avila told Rosales she could skip work and wished her a speedy

3

recovery. Moneytree excused Rosales's absence as domestic violence leave and she suffered no negative employment actions as a result. Rosales recovered and worked her next regularly scheduled shift. When Rosales returned to work Avila advised her about Moneytree's employee assistance program and explained it provided confidential counseling and other resources for domestic violence victims. Avila also gave Rosales a brochure describing the program.

In October 2010, Moneytree placed a verbal warning in Rosales's personnel filed for "Attendance," "Punctuality," and "Balancing." Rosales was late for work, and on a few occasions did not show up at all. Moneytree's warning also was triggered by a series of shortages in Rosales's drawer or the vault at the end of her shift, the most recent incident resulting in an unexplained shortage that exceeded $400.

In June 2011, Rosales asked for domestic violence leave, informing Candido she could not report to work because she had to attend a court hearing concerning to her boyfriend's physical abuse. When Rosales returned to work for her next scheduled shift, Candido questioned her about the nature of the court hearing and the situation with her boyfriend so he could excuse her absence as domestic violence leave. Based on Rosales's response, Candido classified her absence as domestic violence leave and she suffered no negative employment action. When she was later deposed in the action, Candido testified this conversation left her feeling "very strongly [Rosales] was trying to get [her boyfriend] out of jail and not really trying to separate herself from the domestic violence at that time."

In July 2011, Moneytree hired an independent firm to send customers into its branches and evaluate its employees. Rosales helped one of these customers and received the lowest customer service score possible, one on a scale of one to five. Under Moneytree's policies, the evaluation provided grounds to immediately terminate Rosales, but Hernandez and Candido convinced their superiors that she was capable of good customer service and should be given another opportunity. Instead of being terminated,

4

Rosales received a written warning that any failure to improve could result in immediate termination.

In August 2011, Rosales sought her third domestic violence leave, informing Hernandez she was not physically presentable because her boyfriend assulated her with a phone and injured her face. Rosales's doctor wrote a note excusing her from work because she needed five days to recover from her injuries. Moneytree again classified Rosales's absences as excused based on domestic violence leave and she suffered no negative employment action. When Rosales returned to work Hernandez discussed the situation with her, explaining, "Sara[], you can't be doing this. You need to move on with your life [¶] . . . [¶] [You] can do better. [You're] too good for that." Rosales acknowledged Hernandez was trying to be supportive, but his comments nonetheless hurt her feelings because he did not understand her situation.

In documenting this incident, Candido noted Rosales continued to live with her boyfriend, did not report the incident to the police, and was not completely truthful in discussing the matter with her doctor. Candido also reminded Rosales about Moneytree's confidential employee assistance program and advised her that future missed time could affect her attendance record.

Two weeks later, another vault teller reported several bus passes were missing when he performed the fine count at the start of his afternoon shift. He explained the vault had the correct number of bundles of bus passes, but several of the bundles were missing one pass. He reported the missing passes to Hernandez, who confirmed the number of missing passes before notifying Candido. Candido reviewed the records and other documentation to see if there was an innocent explanation for the missing passes, but concluded they had been stolen because there was no other explanation. Candido reported the stolen passes to Moneytree's Vice President of Operations Lora Riemann and Chief Operating Office Christine Kiely.

5

With help from assistant district manager Alba Myers, Candido conducted an investigation into who stole the bus passes. They interviewed every employee who had access to the vault at the Riverside branch, including the vault tellers and Hernandez. They also interviewed Milissa Garcia, a regular teller who received one of the short bundles of bus passes on the same day the missing passes were discovered. Candido and Myers assessed each employee's responses to their questions and also their reactions to the investigation.

Rosales's interview stood out to both Candido and Myers because she reacted differently than when she was questioned about other shortages or problems in the past. Rosales would not maintain eye contact with Candido, and she repeatedly denied taking the passes and kept talking for several minutes, insisting she would never jeopardize her job. As part of the investigation, Candido also reviewed the vault teller schedule and the sequencing of their shifts to determine the optimal time to take the passes and who had the best opportunity to do it while escaping suspicion.

Throughout the four-day investigation, Candido repeatedly discussed each interview with Riemann. Candido wanted to make sure she collected all the information Riemann and Kiely would need to determine how to proceed. When she completed her investigation, Candido submitted an investigative report summarizing her findings and conclusions. After reviewing all the information Candido provided, discussing the matter with Candido, and debating among themselves, Riemann and Kiely concluded Rosales likely was the person who took the passes. Based on Moneytree's zero tolerance policy for theft, Riemann and Kiely decided to terminate Rosales's employment.

Moneytree terminated Rosales's employment in late September 2011. In the termination notice she sent Rosales, Candido explained, "Regrettably, throughout our conversation [during the investigation], I do not believe you gave complete and truthful answers to the questions asked and found the testimony of other witnesses to be more forthright and believable. And, while you repeatedly denied benefitting from the missing

6

passes or any wrongdoing, you were unable to provide me with any satisfactory answers as to what happened to the passes.  [¶]  Sarah, the conclusion I reached, after completing my investigation, was that you misappropriated the 7 bus passes totaling $242 from Moneytree.  Based upon this, I determined that the best course of action was to terminate your employment with Moneytree."

Rosales sued Moneytree approximately a year later, alleging claims for violation of Labor Code section 230.1 and wrongful termination in violation of public policy.  She alleged Moneytree unlawfully discriminated against and terminated her for taking domestic violence leaves.  Moneytree moved for summary judgment on Rosales's claims, arguing it fired her for the legitimate nondiscriminatory reason that she was untruthful during the investigation and stole the bus passes.  The trial court granted the motion, finding Moneytree met its initial burden and Rosales failed to present sufficient evidence to create a triable issue of fact on whether Moneytree's stated reason for firing her was a pretext for discrimination or whether Moneytree otherwise acted with a discriminatory motive.  This appeal followed.

II

DISCUSSION

A.    *California's Prohibition Against Employment Discrimination for Victims of Domestic Violence*

Victims of domestic violence are not a protected class under the California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.).  (See Gov. Code, § 12940, subd. (a) [identifying protected classes].)  Nonetheless, the California Labor Code provides employees certain protections when they need time off from work to address issues arising from domestic violence.  (See Lab. Code, §§ 230, 230.1.)

Labor Code section 230.1 prohibits an employer of 25 or more employees from "discharg[ing] or in any manner discriminat[ing] or retaliat[ing] against an

7

employee who is a victim of domestic violence, sexual assault, or stalking for taking time off from work to attend to any of the following:  [¶]  (1) To seek medical attention for injuries caused by domestic violence, sexual assault, or stalking.  [¶]  (2) To obtain services from a domestic violence shelter, program, or rape crisis center as a result of domestic violence, sexual assault, or stalking.  [¶]  (3) To obtain psychological counseling related to an experience of domestic violence, sexual assault, or stalking.  [¶] (4) To participate in safety planning and take other actions to increase safety from future domestic violence, sexual assault, or stalking, including temporary or permanent relocation."  (Lab. Code, § 230.1, subd. (a).)

Labor Code section 230, subdivision (c), prohibits any employer from "discharg[ing] or in any manner discriminat[ing] or retaliat[ing] against an employee who is a victim of domestic violence, sexual assault, or stalking for taking time off from work to obtain or attempt to obtain any relief, including, but not limited to, a temporary restraining order, restraining order, or other injunctive relief, to help ensure the health, safety, or welfare of the victim or his or her child."  (Lab. Code, § 230, subd. (c).)

Both of these sections further provide that any employee who is "discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated or retaliated against in the terms and conditions of employment" for exercising the employee's rights under these sections is entitled to "reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer, as well as appropriate equitable relief."  (Lab. Code, §§ 230, subd. (g)(2), 230.1, subd. (c).)

The elements of a discrimination or wrongful termination claim under either of these statutes are the following:  (1) the employer terminated the employee or otherwise discriminated or retaliated against the employee in the terms and conditions of employment; and (2) the employer's conduct was motivated by the employee taking time

8

off to invoke any of the remedial steps identified in the statutes.[1]  (*Deschene v. Pinole Points Steel Co.* (1999) 76 Cal.App.4th 33, 41-42 (*Deschene*) [applying Labor Code § 230].)  Here, Rosales alleges a claim under Labor Code section 230.1.

B.      *Governing Legal Principles for Summary Judgment Motions on Employment Discrimination Claims*

Claims alleging unlawful employment discrimination or retaliation may be established through either direct or circumstantial evidence.  (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138 (*Mokler*); *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67 (*Morgan*).)  "'"Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."'"  [Citation.]  Where a plaintiff offers direct evidence of discrimination that is believed by the trier of fact, the defendant can avoid liability only by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor."  (*Morgan*, at pp. 67-68.)

---

[1]      Neither the parties nor the trial court address whether Labor Code sections 230 and 230.1 create a private right of action.  Although the statutes state an employee is entitled to reinstatement, reimbursement, and appropriate equitable relief, they do not expressly authorize a civil action to obtain those remedies.  Instead, both statutes provided an employee "may file a complaint with the Division of Labor Standards Enforcement of the Department of Industrial Relations pursuant to [Labor Code] Section 98.7."  (Lab. Code, §§ 230, subd. (h)(1); 230.1, subd. (d)(1).)  At least one federal district court has recognized a private right of action under Labor Code section 230.  (*Gutierrez v. RWD Technologies, Inc.* (E.D. Cal. 2003) 279 F.Supp.2d 1223, 1226-1227.)

We express no opinion on this issue because (1) Rosales also asserts a claim for wrongful termination in violation of the public policy expressed in Labor Code section 230.1 (see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [authorizing common law tort action for wrongful termination in violation of fundamental public policy established by statute]); and (2) we conclude the trial court properly granted Moneytree summary judgment on Rosales's claims.

Because direct evidence of employment discrimination is rare, California courts have adopted the three-stage burden-shifting test established by the United States Supreme Court for evaluating circumstantial evidence in employment discrimination cases. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*); *Morgan*, *supra*, 88 Cal.App.4th at p. 68.) "'[Through] successive steps of increasingly narrow focus, the [so-called *McDonnell Douglas*] test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained.'" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159 (*Wills*).)

"At trial, under the first step of the *McDonnell Douglas* framework, the plaintiff may raise a presumption of discrimination by presenting a 'prima facie case,' the components of which vary depending upon the nature of the claim . . . . 'A satisfactory showing to this effect gives rise to a presumption of discrimination which, if unanswered by the employer, is mandatory—it requires judgment for the plaintiff.'" (*Serri*, *supra*, 226 Cal.App.4th at p. 860.) The burden then shifts to the employer defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 965 (*Swanson*); *Wills*, *supra*, 195 Cal.App.4th at p. 160.) If the employer does so, "the presumption of discrimination created by the prima facie case '"simply drops out of the picture"' [citations] and the burden shifts back to the employee to prove intentional discrimination." (*Morgan*, *supra*, 88 Cal.App.4th at p. 68.) In the final stage, the plaintiff employee must prove discrimination by presenting evidence to show the employer's proffered reasons are a pretext for discrimination or the employer otherwise acted with a discriminatory motive. (*Serri*, at p. 861; *Swanson*, at p. 965.)

As explained above, the *McDonnell Douglas* framework was developed for use in establishing intentional discrimination at trial. But we must alter the sequential framework on a summary judgment motion because summary judgment law places the initial burden on a moving party defendant to show the plaintiff's claim lacks merit by

10

either negating an essential element of the claim or establishing a complete defense to the claim. (*Serri*, *supra*, 226 Cal.App.4th at p. 861; *Swanson*, *supra*, 232 Cal.App.4th at pp. 965-966.) Thus, when an employer defendant seeks summary judgment on a discrimination claim, the employer "'has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.'" (*Serri*, at p. 861; *Swanson*, at p. 966.)

"If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.'" (*Serri*, *supra*, 226 Cal.App.4th at p. 861.) "'An employee in this situation can not "simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee '"must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-discriminatory reasons.'"'"'" (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834 (*Batarse*).)

In this context, the Supreme Court has emphasized that "'an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.' [Citation.] It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or

11

discriminatory animus on the part of the employer." (*Serri*, *supra*, 226 Cal.App.4th at pp. 861-862.)

"We review the trial court's decision to grant summary judgment de novo. We are not bound by the trial court's stated rationale, but independently determine whether the record supports the trial court's conclusion that the plaintiff's discrimination claim failed as a matter of law." (*Wills*, *supra*, 195 Cal.App.4th at p. 161.)

C.      *Moneytree Met Its Initial Summary Judgment Burden by Establishing a Legitimate Nondiscriminatory Reason for Terminating Rosales*

Moneytree sought summary judgment on Rosales's claims for wrongful termination in violation of Labor Code section 230.1 and the fundamental public policy expressed in that statute. According to Moneytree, it met its initial burden by presenting evidence it had a legitimate nondiscriminatory reason for terminating Rosales's employment. We agree.

"'[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus, "legitimate" reasons [citation] in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination.'" (*Serri*, *supra*, 226 Cal.App.4th at p. 861, italics omitted.)

Moneytree contends it terminated Rosales because its investigation into the missing bus passes lead it to conclude an employee stole the passes, Rosales gave untruthful and incomplete answers during her interview regarding the missing passes, and she was the employee who most likely stole the passes. To support this contention Moneytree presented deposition testimony from its district manager and others about Rosales's employment, the investigation, and the decision to terminate Rosales. Moneytree also relied on the termination notice it gave Rosales, which explained

12

Moneytree had concluded she gave untruthful and incomplete answers during the investigative interview and she had stolen the passes.

This evidence satisfied Moneytree's initial summary judgment burden on both of Rosales's causes of action because it shows Moneytree terminated Rosales for a reason unrelated to her domestic violence leaves. On the Labor Code section 230.1 claim, Moneytree's stated reason negates the essential element that Moneytree fired Rosales for taking time off to address domestic violence issues. (Lab. Code, § 230.1, subd. (a); see *Deschene*, *supra*, 76 Cal.App.4th at pp. 41-42.) Similarly, this evidence negates an essential element of Rosales's claim for wrongful termination in violation of public policy, a claim dependent upon Rosales establishing a violation of Labor Code section 230.1. Rosales does not dispute that Moneytree satisfied its initial burden, and therefore the burden shifted to her to establish a triable issue of material fact.

D.      *Rosales Failed to Establish a Triable Issue of Material Fact*

Rosales contends she created a triable issue of fact in two ways. First, she contends she presented direct evidence that her supervisors harbored discriminatory animus toward her. Second, she contends she presented circumstantial evidence showing Moneytree's stated reason for terminating her was a pretext for discrimination. We address each of these contentions separately.

1.      Rosales Did Not Present Direct Evidence of Unlawful Discrimination

Rosales contends a statement by Candido, her district manager, and two statements by Hernandez, her branch manager, directly prove they harbored "animus toward her based on her repeated need for domestic violence leave." We disagree these statements are direct evidence of discriminatory animus establishing a triable issue of fact.

As explained above, an employment discrimination claim may be established through direct or circumstantial evidence, or both. (*Mokler*, *supra*,

13

157 Cal.App.4th at p. 138; see *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 549 (*DeJung*).) The *McDonnell Douglas* burden-shifting framework applies only to claims based on circumstantial evidence. The courts developed that framework to allow plaintiffs to prove unlawful discrimination through circumstantial evidence and inference when direct evidence is unavailable. But that framework is unnecessary when the plaintiff relies on direct evidence. (*DeJung*, at p. 550; *Mokler*, at p. 138; *Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1144-1145 (*Trop*).) Thus, when an employee seeks to rely on direct evidence, the question is simply whether the employee's evidence is sufficient to create a triable issue on whether the employer acted with discriminatory animus.

"'Direct evidence is evidence which proves a fact without inference or presumption." (*Trop*, *supra*, 129 Cal.App.4th at p. 1145; see *DeJung*, *supra*, 169 Cal.App.4th at p. 550.) "Direct evidence of retaliation [or discrimination] may consist of remarks made by decisionmakers displaying a retaliatory [or discriminatory] motive.'" (*Colarossi v. Coty US, Inc.* (2002) 97 Cal.App.4th 1142, 1153 (*Colarossi*).) "Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." (*DeJung*, at p. 550.) Similarly, "Direct evidence may take the form of admissions by a decision maker that the adverse employment action was taken because of the employee's membership in the protected class." (*Batarse*, *supra*, 209 Cal.App.4th at pp. 834-835.)

For example, in *DeJung*, numerous comments by the chair of a hiring committee that "they want[ed] somebody younger, maybe in their 40's'" constituted direct evidence sufficient to defeat a summary judgment motion on an age discrimination claim because the comments, made during the hiring process, showed discriminatory animus against older applicants without the need for an inference or presumption. (*DeJung*, *supra*, 169 Cal.App.4th at p. 550.)

14

In contrast, *Trop* involved a summary judgment motion on a pregnancy discrimination claim where the plaintiff's boss stated that plaintiff should not have any children while she worked for the boss did not amount to direct evidence of discriminatory animus because the isolated comment was not contemporaneous with the discharge or causally related to the company's decision to terminate plaintiff. (*Trop*, *supra*, 129 Cal.App.4th at pp. 1147-1149.) At a company Christmas party, the plaintiff was playing with another employee's infant and said, "'It looks like I get to have one of my own,'" and the plaintiff's boss responded, "'Not while you are working for me.'" (*Id*. at pp. 1140, 1148.) A little more than a month later, the boss terminated the plaintiff's employment based on her job performance, explaining the plaintiff had lost messages, lacked interest in work, and put through a phone call at an inopportune time. When the plaintiff sued for pregnancy discrimination, the employer produced evidence in its summary judgment motion it terminated the plaintiff for the legitimate and nondiscriminatory reason she performed her job poorly. (*Id*. at pp. 1142-1143.)

In upholding the trial court's decision granting the employer summary judgment, the *Trop* court rejected the plaintiff's contention that her boss's comment at the Christmas party was direct evidence of discriminatory animus. The court explained the boss made her ambiguous statement more than a month before deciding to terminate the plaintiff, and the plaintiff presented no evidence establishing a causal relationship between the comment and her termination for poor job performance. (*Trop*, *supra*, 129 Cal.App.4th at pp. 1148-1149.)

Here, Rosales first points to a discussion she had with Candido after she took leave to attend a court hearing regarding her boyfriend in June 2011. During this conversation, Candido asked Rosales a few questions about the court appearance and her situation with her boyfriend to determine whether Candido could code the missed time as domestic violence leave, which she did. Rosales does not identify any statement Candido made during this conversation as direct evidence of discriminatory animus. Instead,

15

Rosales points to a statement Candido made two years later when Rosales's counsel deposed her about the conversation. From that testimony, Rosales points to Candido's statement that she "felt very strongly [Rosales] was . . . not really trying to separate herself from the domestic violence at that time" because she appeared at the court hearing to testify her boyfriend needed anger management help, not jail time.

Next, Rosales contends Hernandez's response to a hypothetical question Rosales's counsel asked during Hernandez's deposition directly proves his discriminatory animus. In response to counsel's question why he would not want employees showing up at work with visible bruises, Hernandez simply responded, "It gives the wrong image."

Finally, Rosales contends comments Hernandez made to her after she returned from her five-day leave directly prove his discriminatory animus. She points to Hernandez's statements that "you can't be doing this. You need to move on with your life." And also comments that Rosales "can do better" and she's "too good for that." At her deposition, Rosales conceded Hernandez was trying to be supportive when he made these comments, but they nonetheless hurt her feelings because he did not understand the situation.

Each of these statements simply voices general observations or concerns for Rosales's well-being. None of them amount to direct evidence of discriminatory animus because they do not reflect a desire or motive to take any adverse employment action against Rosales without drawing significant inferences from the statements and considering additional evidence. The statements alone do not display a retaliatory motive (*Colarossi*, *supra*, 97 Cal.App.4th at p. 1153), they are not admissions (*Batarse*, *supra*, 209 Cal.App.4th at pp. 834-835), and they were not made contemporaneously with the decision to terminate Rosales and are not causally related to that decision (*DeJung*, *supra*, 169 Cal.App.4th at p. 550; *Trop*, *supra*, 129 Cal.App.4th at pp. 1148-1149).

In short, nothing in the statements connects them to Moneytree's decision to terminate Rosales for being untruthful and stealing the bus passes. Giving Rosales

16

every benefit of the doubt (see *Kelly v. Stamps.com, Inc.* (2005) 135 Cal.App.4th 1088, 1098 [opposing party's evidence is liberally construed on summary judgment]), the statements at most reflect a general concern or disapproval of her failure to remove herself from an abusive relationship. They do not threaten termination or any other adverse employment action for Rosales's failure to terminate the relationship or for taking domestic violence leave. In her reply, Rosales concedes these statements do not directly establish a discriminatory animus, but rather require a fact finder to infer animus from the statements and other evidence. As explained above, direct evidence is evidence that proves a fact *without* inference or presumption. (*Trop*, *supra*, 129 Cal.App.4th at p. 1145; see *DeJung*, *supra*, 169 Cal.App.4th at p. 550.) Accordingly, the statements are not direct evidence of discriminatory animus sufficient to defeat Moneytree's motion.[2]

Rosales contends *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297 (*Sandell*), supports her contention that Candido's and Hernandez's statements are direct evidence of discriminatory intent. We disagree. In *Sandell*, the plaintiff took several months off work to recover from a stroke. (*Id*. at p. 303.) When he returned to work, the plaintiff used a cane and spoke much slower than he did before his stroke because he experienced difficulties with his balance and speech. Shortly after his return, the plaintiff's boss told him, "if [he] didn't make a full recovery, that the company had the right to fire [him] or demote [him] and reduce [his] salary." The boss also asked the plaintiff "when [he] was going to get rid of the cane and when [he] was going to drop the dramatization." (*Id*., at p. 304.) When the boss later terminated the plaintiff, he sued for

---

2        In her reply, Rosales points to a second statement by Candido as direct evidence of discriminatory animus. Specifically, she identifies an e-mail Candido sent to her supervisor after Rosales returned from her five-day domestic violence leave in August 2011. In the e-mail, Candido told her supervisor she explained to Rosales that "future missed time could effect [*sic*] her attendance record." Even this statement is not direct evidence of discriminatory animus because there is no causal relationship between the statement and Moneytree's decision to terminate Rosales for dishonesty and theft.

17

disability discrimination and pointed to these statements as direct evidence of the boss's discriminatory animus. The *Sandell* court accepted the first statement as direct evidence because it showed the boss's willingness to terminate the plaintiff because he had not fully recovered from the stroke. The *Sandell* court also accepted the second, when combined with the first, because it supported the inference the plaintiff was not recovering fast enough for the boss's liking. (*Id.* at pp. 319-320.)

None of the statements Rosales points to in this case rise to the level of the statements at issue in *Sandell.* Indeed, neither Candido nor Hernandez threatened to terminate Rosales nor did they complain about her taking leave. Moreover, the *Sandell* court did not conclude that the foregoing statements alone were sufficient to establish discriminatory animus. Rather, the *Sandell* court simply explained they should be considered "in the mix of evidence." (*Sandell*, *supra*, 188 Cal.App.4th at p. 320.) Earlier in the opinion, the *Sandell* court decided that other evidence the plaintiff presented challenging the credibility of the employer's purported legitimate, nondiscriminatory reason established a triable issue sufficient to defeat summary judgment. (*Id.* at p. 319.)

Because we conclude the statements Rosales identifies are not direct evidence of discriminatory animus, we do not address her further contentions concerning (1) whether Candido's and Hernandez's statements may establish Moneytree acted with discriminatory animus even though they did not make the final decision to terminate Rosales, and (2) the quantum of direct evidence necessary to defeat summary judgment.

2.      Rosales's Evidence Does Not Create a Triable Issue on Pretext

Rosales also contends she established a triable issue under the *McDonnell Douglas* framework by presenting circumstantial evidence showing Moneytree's stated reason for terminating her was a pretext for unlawful discrimination based on her repeated domestic violence leaves. As evidence of pretext, Rosales points to (1) the comments by Candido and Hernandez allegedly showing they harbored a discriminatory

animus against her; (2) the temporal proximity between Rosales's five-day domestic violence leave and her termination; and (3) alleged inadequacies in the missing bus pass investigation that lead to Rosales's termination. We conclude Rosales's evidence does not constitute substantial evidence of pretext sufficient to defeat Moneytree's motion.

To create a triable issue Rosales must produce substantial evidence that Moneytree's stated reason for terminating her was untrue or pretextual, or that Moneytree acted with a discriminatory animus, such that a reasonable trier of fact could conclude Moneytree engaged in intentional discrimination. (*Serri*, *supra*, 226 Cal.App.4th at p. 861.) "'[E]vidence that the employer's claimed reason [for the employee's termination] is *false*—such as that it conflicts with other evidence, or appears to have been contrived after the fact—will tend to suggest that the employer seeks to conceal the real reason for its actions, and this in turn may support an inference that the real reason was unlawful.'" (*Id*. at p. 863.)

But, "there must be more than inconsistent justifications for an employee's termination to support an inference that the employer's true motivation was discriminatory. . . . '. . . Proof that the employer's proffered reasons are unworthy of credence may "considerably assist" a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.'" (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1531 (*McGrory*).) "Logically, disbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably give rise to an inference that the motivation was a prohibited one." (*Id*. at pp. 1531-1532.) When evaluating an employee's evidence of pretext, the court must consider the totality of all the evidence, not each item in isolation. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541 (*Reid*).)

19

As explained above, we conclude the identified statements by Candido and Hernandez are not direct evidence of discriminatory animus. That conclusion, however, does not prevent those same statements from serving as circumstantial evidence to support Rosales's discrimination claim. (*Reid*, *supra*, 50 Cal.4th at pp. 541-542.) Rosales contends these statements showed Candido and Hernandez harbored discriminatory animus because they were responsible for collecting and presenting the information on which Moneytree based that decision.

Candido's and Hernandez's statements, however, are little more than vague generalities and broad concerns for Rosales's well-being. Nothing in the statements or their timing hints at a desire to terminate Rosales based her domestic violence leaves or otherwise suggests Moneytree's stated reason for terminating Rosales was false. At best, these statements suggest "only a weak suspicion that discrimination was a basis for [Rosales's] termination"; alone they do not establish Moneytree acted with discriminatory animus or that its stated reason for terminating Rosales was a pretext for discrimination. (See *Serri*, *supra*, 226 Cal.App.4th at pp. 867-868.) Simply put, suspicion is not evidence.

Similarly, the three-week temporal proximity between Rosales's five-day domestic violence leave and her termination fails to establish pretext. California courts have repeatedly held that temporal proximity may be sufficient to establish a prima facie case in the first stage of the *McDonnell Douglas* framework, "[b]ut temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353; see *Loggins v. Kaiser Permanente Intern.* (2007) 151 Cal.App.4th 1102, 1112-1113 (*Loggins*).) Temporal proximity is one factor, but additional substantial evidence is required to establish pretext. (*Loggins*, at p. 1113.)

The evidence Rosales cites fails to establish deficiencies in Moneytree's bus pass investigation and therefore is not evidence of pretext or discriminatory animus.

20

First, Rosales claims the investigation was inadequate because Candido lead the investigation despite her discriminatory animus against Rosales, but, as explained above, Candido's isolated comments do not establish discriminatory animus against Rosales and therefore do not undermine the integrity of the investigation.

Next, Rosales challenges the adequacy of the investigation because Candido had no training in conducting investigations into employee misconduct and "waited a full year before papering the record with the results of her investigation." The testimony Rosales cites supports neither of these contentions. Candido testified she had no "formal training" in conducting investigations, but she also testified (1) her job provided "ongoing, as-you-go training" and this was not her first investigation; (2) she constantly discussed ongoing investigations with her supervisor, who told her who to interview, how to interview each person, and what to look for until the supervisor was convinced all available information was obtained; and (3) she participated in bi-weekly district manager conference calls that included discussions about investigations and activities at other branches. Similarly, although Candido acknowledged the formal written report on her investigation was prepared a year after Moneytree terminated Rosales, she also testified she had prepared an investigation report at the time Rosales was terminated and the final report was just a formalized version of the original report.

Rosales also faults the investigation for failing to conclusively determine who took the bus passes, but the law does not require Moneytree to have irrefutable proof Rosales was untruthful and stole the passes. Rosales was an at-will employee "subject to termination . . . for no reason or almost any reason [citation], except for a reason that violates a fundamental public policy recognized in a constitutional or statutory provision." (*McGrory*, *supra*, 212 Cal.App.4th at p. 1514; see *Trop*, *supra*, 129 Cal.App.4th p. 1149.) In discrimination cases such as this, the issue is not the objective truth or falsity of Moneytree's stated reason for terminating Rosales, but whether Moneytree honestly believed Rosales was untruthful and took the passes. (*Wills*,

21

*supra*, 195 Cal.App.4th at p. 170.) Indeed, the factual dispute at issue is whether discriminatory animus motivated Moneytree, not whether Moneytree was wise, shrewd, prudent, or even competent in conducting its investigation and reaching its conclusions. (*Id*. at p. 160.) Accordingly, the purported lack of a conclusive determination regarding who took the bus passes does not undermine the investigation or establish pretext because Rosales fails to cite any evidence showing Moneytree did not honestly believe Rosales lied and stole the passes.

Finally, Rosales argues the investigation was inadequate because Moneytree failed to "closely scrutinize" another vault teller who Rosales contends worked the shift immediately before the theft was discovered and had a stronger motive to take the passes because her boyfriend allegedly rode the bus. The record, however, reveals that Candido interviewed every vault teller and employee who had access to the vault where the passes were kept. Based on each employee's response while interviewed and other information, including which shifts each vault teller worked in the days leading up to the theft, the sequencing of those shifts, and when the theft occurred, Moneytree concluded Rosales was untruthful and took the passes. The record therefore reveals Moneytree gave all vault tellers equal consideration in its investigation and Rosales's contention Moneytree should have more closely scrutinized another teller is not evidence of pretext.

Accordingly, the evidence Rosales presented about Moneytree's investigation is not evidence of pretext and Rosales is left with only (1) the isolated statements by Candido and Hernandez, which at most give rise to a weak suspicion of discrimination (see *Serri*, *supra*, 226 Cal.App.4th at pp. 867-868), and (2) the temporal proximity of Rosales's final leave and her termination, which requires substantial additional evidence to establish pretext (*Loggins*, *supra*, 151 Cal.App.4th at p. 1113). When considered together, that evidence does not amount to the type of substantial evidence required to create a triable issue on pretext or discriminatory animus. (See

22

*Serri*, at p. 862.)  Rosales simply fails to produce any substantial evidence showing Moneytree did not terminate her for being untruthful and taking the bus passes.[3]

## III

### DISPOSITION

The judgment is affirmed.  Moneytree shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

---

[3]     Because we conclude Moneytree met is burden to establish it terminated Rosales for a legitimate nondiscriminatory reason and Rosales failed to establish a triable issue of material fact on pretext or discriminatory animus, we do not consider Moneytree's additional argument that the trial court ruling could be upheld based on the after-acquired evidence that Rosales lied on her job application.